**Patsy C. RUSSO, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–814.

United States Court of Veterans Appeals.

April 2, 1996.

Charles H. Holdstock and Timothy F. Barbour were on the brief, Oklahoma City, OK, for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and A.M. Fent were on the brief, Washington, DC, for appellee.

Before FARLEY, IVERS, and STEINBERG, Judges.

IVERS, Judge:

The appellant, Patsy C. Russo, appeals a May 6, 1993, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for residuals of frozen feet. *Patsy C. Russo*, BVA 93–08404 (May 6, 1993). The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will vacate the Board's decision denying service connection and remand the matter for further adjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the United States Army from November 1942 until December 1945. Record (R.) at 16. In January 1945, while engaged in combat operations in Germany, the appellant was wounded in the left foot by artillery shrapnel. R. at 45. The appellant's service medical records (SMRs) for the period are unavailable, apparently destroyed in the 1973 fire at the National Personal Records Center (NPRC). *See* R. at 28.

On February 14, 1990, the appellant filed a VETERAN'S APPLICATION FOR COMPENSATION OR PENSION seeking benefits for frostbite of the feet and a shrapnel wound on the left heel. R. at 18–21. Upon receipt of the application, the VA regional office (RO) requested that the appellant submit medical evidence to support his claim. R. at 23. The appellant responded by submitting a VA Form 21–4138, STATEMENT IN SUPPORT OF CLAIM, in which he stated that he "could not come up with the paperwork of proof from the convalescent hospital" and that he could not recall the names of any physicians he had seen except for Dr. James Trilli, his current podiatrist. R. at 25.

In April 1990, VA requested medical records from Dr. Trilli. R. at 33. The records submitted by Dr. Trilli documented a five-year history of complaints from the appellant about painful feet from March 1985 to February 1990. R. at 34–41. In the record, Dr. Trilli noted that the appellant described the pain as "sharp and throbbing." *Id.*

In June 1990, the appellant submitted to the RO an authorization for VA to obtain records from "Dr. Matthews, Philadelphia Avenue, Chambersburg, PA, 17201." R. at 64. A July 5, 1990, VA request for medical records was addressed to Dr. Matthews without any street in the address. On July 23, 1990, the appellant was given a VA physical examination. R. at 68–78. The VA physician noted hyperpigmentation and "discoloration of both feet." R. at 70. The VA physician's diagnoses were: (1) atherosclerotic heart disease; (2) hypertension; (3) history of shrapnel wounds left heel with scar formation; (4) history of frozen feet; (5) rule out arthritis of both ankle joints; (6) venous insufficiency of both feet and stasis dermatosis of both feet and both legs; and (7) minimal varicosity of both legs. R. at 71, 76. A July 1990 x-ray report stated that abnormalities found in the feet were "most likely due to gouty arthritis." R. at 78.

In a letter mailed to the appellant in August 1990, the RO disallowed the appellant's claim because he had failed to submit medical evidence either from Dr. Matthews, the appellant's previous physician, or Dr. Trilli (a fact that was incorrect). R. at 82–3. The RO notified the appellant that his claim could be reactivated by submitting other documents. *Id.* In response, the appellant submitted a copy of appointment dates from Dr. Trilli's office. R. at 87–88.

In September 1990, the RO acknowledged that it had been incorrect in issuing an adjudication letter disallowing the claim on the basis of appellant's failure to submit Dr. Trilli's records but continued to deny service connection for residuals of frostbite because the appellant had not submitted service verification. R. at 91. The appellant mailed the RO proof of service which was received February 4, 1991. R at 94.

On February 11, 1991, an RO rating decision granted the appellant service connection for the shrapnel wound scar on the left heel. R. at 98–99. The scar was rated at 0% disabling because it was not found to be painful or tender. *Id.* Service connection for residuals of frostbite, however, was denied "as there is no medical evidence to show that the veteran suffered from this condition while on active military duty." R. at 99.

On April 15, 1991, the RO sent another letter to the appellant confirming a 0% rating for residuals of the shrapnel wound but disallowing service connection for residuals of frostbite. R. at 101. Also in April 1991, the RO requested the appellant's medical records from the NPRC. R. at 104. The NPRC responded by sending some information obtained from the Hospital Admission Card data files from the Office of the Surgeon General. R. at 106. These records showed that the appellant had been hospitalized for 119 days beginning in January 1945 for a shell fragment wound of the foot. *Id.* The record contained no diagnosis for frozen feet.

On June 18, 1991, the appellant filed a Notice of Disagreement (NOD) contesting the rating decision issued on April 15, 1991. R. at 109–10. The appellant also submitted a letter from Dr. William Kilpatrick which stated that the appellant suffered from "an element of peripheral neuropathy" in his heels. R. at 112. Neuropathy is a "disorder affecting any segment of the nervous system." STEDMAN'S MEDICAL DICTIONARY, 1204 (26th ed.1995). Dr. Kilpatrick stated that "[t]he real question is—what is the cause of his peripheral neuropathy; whether it is old damage from the frostbite he had in his feet, or whether or not it is related to other problems acquired later in life." R. at 112.

On December 10, 1991, the RO issued another rating decision which continued the 0% evaluation for the scar and denied service connection for the residuals of frozen feet. VA issued a Statement of the Case (SOC) on December 18, 1991. R. at 118–26. The appellant filed an appeal with the BVA on January 23, 1992. R. at 128.

A personal hearing was held for the appellant on March 26, 1992. R. at 135–57. During the hearing, the appellant and his wife both testified that the appellant's feet have been sore every winter since leaving the service. R. at 144–48. The appellant testified that Dr. Matthews "hasn't submitted nothing" and that the only evidence he had relating to treatment with Dr. Matthews was his appointment cards. R. at 154. The appellant also testified to a conversation that he had with a physician, Dr. Corry, during an examination in which she made some comments about his foot condition. The transcript from the hearing contained the following testimony:

MR. ALVEREZ:

Q: Dr. Corry examined you. What did she say about your foot?

MR. RUSSO:

A: She ... she had some kind of an instrument that she was running along the scar and she said, "That's very sensitive," which made me jump. I didn't yell or scream at her. And she said, "That's very sensitive." I said "Yes it is." And she says ... she looked at it and she said, "The reason why they couldn't stitch it is because you had frozen feet." And I said, "Well that's what I am here to prove that I had frozen feet. I guess that's the purpose of this here exam."

R. at 145. An April 1992 RO decision, following the decision of the hearing officer, assigned a 10% evaluation for the scar on the left heel but continued the denial of service connection for the residuals of frozen feet. R. at 164.

The appellant appealed the hearing officer's decision on June 3, 1992. R. at 172. In July 1992, during an informal hearing presentation, the appellant's service representative argued that the Board had mistakenly searched for the appellant's medical records under an incorrect identification number and asked that this case be remanded for a search under the correct number. R. at 177.

On May 6, 1993, the BVA issued a decision denying service connection for residuals of frozen feet. R. at 4–11. *Russo*, BVA 93-08404, *supra*. The BVA found the appellant's claim was well grounded but denied it because it found that the claim was not supported by the available service medical records and because his recollections pertaining to his injuries were not credible. On August 23, 1993, the appellant appealed to this Court.

## II. ANALYSIS

### A. Well–Grounded Claim

▉ A claimant seeking service connection for a condition bears the burden of

submitting a well-grounded claim. 38 U.S.C. § 5107. A "well[-]grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [38 U.S.C. § 5107]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). Where the determinative issue involves medical causation, competent medical evidence that a claim is "plausible" is required in order for the claim to be well grounded. *See Grivois v. Brown*, 6 Vet.App. 136, 140 (1994); *Grottveit v. Brown*, 5 Vet. App. 91, 93 (1993); *see also Edenfield v. Brown*, 8 Vet.App. 384, 388 (1995) (Court reviews de novo whether claim is well grounded); *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995) (General requirements of a well-grounded claim are medical evidence of a current diagnosis and of a nexus between that diagnosis and an in-service injury or disease and medical or, under certain circumstances, lay evidence of service incurrence or aggravation). As to service incurrence, *Caluza* held that 38 U.S.C. § 1154(b) relaxes the evidentiary standards for establishing a well-grounded claim. *Id.* at 507.

■ Under section 1154(b) and *Caluza*, the appellant's uncontradicted assertion of having experienced frozen feet in combat is consistent with the circumstances of his service, and therefore is satisfactory evidence that this occurred in service. *Ibid.* Dr. Kilpatrick has diagnosed "an element of peripheral neuropathy" in the appellant's heels, which he allows may be related to "old damage from the frostbite [the veteran] had in his feet" or "other problems acquired later in life." R. at 112; *see Lathan v. Brown*, 7 Vet.App. 359, 366 (1995) (medical evidence that causal connection was "possible, although less than certain," could satisfy nexus criterion for a well-grounded claim). The appellant has also testified that he has suffered foot pain every winter since his release from the service, and Dr. Trilli reports the appellant's complaints from 1985–90 regarding painful feet. R. at 34–41. There is also a VA physician's 1990 note that the appellant has "hyperpigmentation" and "discoloration of both feet" and a "history of frozen feet." R. at 70.

■ The Court recently concluded in *Gregory v. Brown*, that where a veteran's "SMRs were lost in the 1973 fire, the Court is inhibited in making a de novo determination on well groundedness in terms of what diagnoses and treatment may have occurred in service." *Gregory*, 8 Vet.App. 563, 569 (1996). Considering the similar facts in this case and "the reduced adjudicative evidentiary requirements established by section 1154(b) for combat veterans and the evidence as to continuity of symptomatology," the Court proceeds to review the merits of the BVA decision. *Ibid; see Moore v. Derwinski*, 1 Vet.App. 401, 405 (1991) (claim for service connection for diagnosed arthritis in heels held well grounded where combat veteran's SMRs destroyed in 1973 fire and partially reconstructed SMRs and his testimony supported the claim).

### B. Service Connection

■ A finding of service connection is a finding of fact. *Horowitz v. Brown*, 5 Vet. App. 217, 221 (1993). The Court reviews factual findings only to determine whether they are "clearly erroneous." *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Id.* at 52. The Board is required to provide a written statement of the reasons and bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Masors v. Derwinski*, 2 Vet.App. 181, 188 (1992); *Gilbert*, 1 Vet.App. at 57.

■ Under 38 U.S.C. § 5107(b), "where there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant." *Gilbert*, 1 Vet.App. at 53–55.

This Court has ruled that "where service medical records are presumed destroyed, in such a case, the BVA's obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt is heightened." *O'Hare v. Derwinski,* 1 Vet.App. 365, 367 (1991); *see also Cuevas v. Principi,* 3 Vet.App. 542, 548 (1992). The appellant claims that the Board must afford him a heightened "benefit of the doubt" because his SMRs were destroyed. Appellant's Brief (Br.) at 7–8. This argument implies that the appellant should be granted service connection when the evidence almost, but not quite, reaches a positive-negative balance. This argument misinterprets 38 U.S.C. § 5107(a) as construed by the Court's caselaw. The cases do not establish a heightened "benefit of the doubt," only a heightened duty of the BVA to consider the applicability of the benefit of the doubt, to assist the claimant in developing the claim, and to explain its decision when the veteran's medical records have been destroyed. *See Ussery v. Brown,* 8 Vet.App. 64 (1995). The caselaw does not lower the legal standard for proving a claim for service connection but rather increases the Board's obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the appellant.

The Secretary argues that the BVA's denial of service connection was supported by a plausible basis in the record. Secretary's Br. at 9. The BVA decision denied the appellant's claim because of an "absence of service medical data supporting the veteran's claim" and issues of the veteran's credibility. R. at 7–8. The lack of medical data offered to support the appellant's claim can be explained by the presumed destruction of the records by the 1973 fire at the NPRC.

▆▆▆ Medical records, however, are not the only means to prove service connection. Lay evidence may be sufficient to prove service connection in the case of a combat veteran. Under 38 U.S.C. § 1154(b):

> In the case of a veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service occurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran.

38 U.S.C. § 1154(b). *See also* 38 C.F.R. § 3.304(d); *Sheets v. Derwinski,* 2 Vet.App. 512, 515 (1992) ("the law specifically provides that service connection may be proven by satisfactory lay evidence, *without the support of official records*") (emphasis in original). As long as the evidence is "satisfactory," consistent with the "circumstances of service," it can prevail in the absence of any official record, and the evidence is sufficient to establish service connection. *See Caluza,* 7 Vet.App. at 508. Under section 1154(b), "satisfactory evidence" is "credible evidence" or that "which is plausible or capable of being believed." *Caluza,* 7 Vet.App. at 511. Once satisfactory evidence has been presented, the lay evidence prevails unless "clear and convincing" evidence demonstrates that the injury did not occur in service. *Id.* at 509.

The Secretary contends that although section 1154(b) allows the appellant to prove service connection through lay testimony in this case, the appellant's evidence is not "satisfactory lay or other evidence" such as to establish service connection. Secretary's Br. at 10. The Court notes, however, that the evidence presented is sufficient to establish service incurrence—that is, that the appellant suffered frozen feet in service—and that the BVA has not pointed to any clear and convincing evidence to the contrary.

Although the few medical records that were obtained from service do not show a diagnosis or treatment for frozen feet during the appellant's 119–day hospital stay, the appellant has testified that he was wounded in January 1945 after fighting in the snow for several days. R. at 137. This testimony makes the case for frostbite certainly "plausi-

ble." The records list the diagnosis as "Wound(s), lacerated with no nerve or artery involvement." *Id.* A four-month hospital stay seems exceptionally long for a shrapnel laceration which caused no nerve or artery damage. The statement by the appellant that Dr. Corry had told him his feet were not stitched because they were frozen is certainly a plausible explanation for the long recovery period.

In addition, the appellant has presented evidence in the form of a letter by Dr. Kilpatrick that raises the question of whether the peripheral neuropathy may be a residual of frostbite. R. at 112. Although this letter is not a diagnosis, it does advance a possible explanation which is consistent with the appellant's sworn testimony. The appellant has testified that he has suffered from painful feet since leaving the service and, although there is no record of continuity of symptomatology for the period immediately after service, there is medical evidence from more recent examinations that the appellant currently suffers from medical abnormalities in both feet. R. at 76, 152.

The BVA has failed to offer clear and convincing evidence to impeach the veteran's sworn testimony regarding the treatment of his combat wounds. Furthermore, the BVA did not evaluate or seek clarification of Dr. Corry's alleged statement to the appellant during his VA examination. The BVA's finding that the "negative evidence outweighs the positive" (R. at 8) is not an adequate basis for dismissing the appellant's testimony and the statement by Dr. Kilpatrick.

For these reasons, the Court holds that the BVA did not provide an adequate statement of reasons and bases for rejecting credible testimony and therefore the Court will remand the claim for service connection for residuals of frostbite. On remand, VA should schedule a medical examination to reconcile whether or not the veteran has residuals from frostbite.

### III. CONCLUSION

Accordingly, upon consideration of the record, the Court VACATES the May 6, 1993, BVA decision and REMANDS the matter for further development and readjudication consistent with this opinion.