# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-0133

WILLIAM C. CROMER, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before IVERS, *Chief Judge*, and LANCE and DAVIS, *Judges*.

## O R D E R

The appellant, through counsel, appeals a January 15, 2003, decision of the Board of Veterans' Appeals (Board or BVA) that denied entitlement to service connection for dementia. Both parties filed briefs, and the appellant filed a reply. This appeal is timely, and the Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will affirm the Board's decision.

The appellant had active service in the U.S. Army from December 1945 to May 1947. Record (R.) at 20. In October 1993, he filed a claim for service connection for organic affective dementia, alleging that it came about when he "suffered a fever of 108 degrees while assigned at Ft. Sill, Oklahoma during November 1945 related to consumption of milk contaminated with streptococci agent." R. at 172. His claim indicated that he tried to acquire his service medical records (SMRs) from the National Personnel Records Center (NPRC), but they informed him that his SMRs were not on file and were likely destroyed in a fire in 1973. R. at 173. His claim also included a physician's statement, saying that his mental disability dated from the time of his in-service illness. R. at 174. VA attempted to obtain alternative records, and in May 1994, it received hospital extracts from the Office of the Army Surgeon General (SGO) showing brief periods of hospitalization for pharyngitis and peritonsillar abscess in 1945. R. at 181-83. The appellant's claim was subsequently denied, and he unsuccessfully attempted to reopen the case in 1996. R. at 185, 253-55. The appellant appealed to the Board, and in March 1998, the Board remanded for readjudication. R. at 316-18. A November 1999 Board decision affirmed the regional office's (RO's) denial of the appellant's claim. R. at 387-99. The appellant appealed to this Court, and in December 2001, this Court granted a joint motion for remand. R. at 411. The appellant appealed to this Court again, and in December 2001, the Court granted another joint motion for remand. R. at 444. The Court's 2001 remand resulted in the decision presently on appeal.

In the decision on appeal, the Board concluded that the duty to assist had been satisfied. With regard to the merits of the claim, the Board denied service connection for dementia, finding that "[d]ementia began decades after service, and there is no credible competent medical evidence to link it to service." R. at 16. The Board noted that several medical professionals stated that the appellant's condition had its origin in service. However, the Board observed that no objective

medical evidence supported those opinions. As the Board stated: "Since 1993, the veteran's story has been repeated by him to other doctors, and doctors have passed the story on to one another." R. at 14. The Board also stated that

> it is not until the 1990s, in connection with the claim for service connection, that the veteran came up with the story of the bad milk, brain infection, etc[.], in service. Then too, while his story may not be a conscious fabrication, it comes from an individual with dementia, and doctors have described his recent flawed memory, confusion, and other impaired thought processes surrounding his dementia illness. In sum, the veteran's account of in-service events is not credible.

R. at 15.

The appellant raises only one issue on appeal. He makes a policy argument, saying that the Court should apply an "adverse presumption" where SMRs have been lost or destroyed while in Government control, thereby requiring the Agency to disprove a claimant's allegation of injury or disease in service in these particular cases. He argues that an evidentiary imbalance is created by the Government's negligent destruction of SMRs, and thus he should be entitled to a presumption that shifts the burden of proof to VA to disprove his alleged in-service brain infection. The appellant does not rely on a statute or regulation from which the presumption should be inferred but rather asks the Court to create a presumption based only on general rules of proof that create an unfair disadvantage and on equitable factors.

The Secretary argues for affirmance, because, he argues, the appellant has made no factual or legal challenge to the decision, he does not point to any error by the Board, and he does not take issue with the plausibility of the Board decision, the evaluation of the evidence, or the reasons or bases for the Board's decision. He also states that the appellant's policy argument advocating application of an adverse presumption is misconceived. Furthermore, he argues that, because the appellant offers no facial challenge to the Board decision, and explicitly waives all procedural issues on appeal, the appellant has abandoned the opportunity to challenge the Board's findings. Moreover, the Secretary asserts that the appellant's argument that the burden of proof should shift to the Secretary in cases where records are lost or destroyed is misconceived because the Court has previously addressed the issue and VA has acted in accord with the law. Finally, the Secretary argues that the adoption of an adverse presumption in cases where records are lost or destroyed would act to shift the burden of proof from the appellant to the Secretary, in contravention of statute.

This Court has long held that issues not raised on appeal are considered abandoned. *See Disabled Am. Veterans v. Gober*, 234 F.3d 682, 688 n.3 (Fed. Cir. 2000) (stating that the court would "only address those challenges that were briefed"); *see also Bucklinger v. Brown*, 5 Vet.App. 435 (1993). The appellant explicitly states that he is raising only one issue before the Court. Appellant's Brief at 6. He makes no argument with respect to the Board's determination that dementia began many years after service and was not caused by any incident of service. Nor does he challenge the Board's legal conclusion that dementia was not incurred in or aggravated by service. Moreover, he

2

points to no error by the Board with regard to the Board's heightened duty to explain its findings and conclusions when it is presumed that SMRs were destroyed. *See Russo v. Brown*, 9 Vet.App. 46, 51 (1996). Furthermore, he makes no attempt in his reply brief to argue against abandonment of the issues. Because the appellant has not raised any issue contained in the Board decision, those issues are deemed abandoned, and the Board decision must be affirmed.

The appellant does, however, make an argument with respect to adverse presumption. Initially, he relies on *Apusento Garden, Inc. v. Superior Court of Guam*, 94 F.3d 1346 (9th Cir. 1996), but *Apusento* is not controlling on this Court, and it is inapposite. The Court notes that it has previously addressed the issue of lost or destroyed records held by the Government. In *O'Hare v. Derwinski*, 1 Vet.App. 365, 367 (1991), the Court held that when SMRs are presumed destroyed, "the BVA's obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule is heightened." This rule has become well entrenched in the Court's caselaw. *Stewart v. Brown*, 10 Vet.App. 15, 19 (1997); *Ussery v. Brown*, 8 Vet.App. 64, 68 (1995); *Doran v. Brown*, 6 Vet.App. 283, 286 (1994); *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992); *Moore v. Derwinski*, 1 Vet.App. 401, 406 (1991). Notably, the Court clarified this rule in *Russo*, where an appellant argued that he was entitled to a heightened "benefit of the doubt" because of the destruction of his SMRs. The Court in *Russo* stated that established caselaw does "not establish a heightened 'benefit of the doubt,' only a heightened duty of the Board to consider applicability of the benefit of the doubt rule, to assist the claimant in developing the claim, and to explain its decision when the veteran's medical records have been destroyed." *Russo*, 9 Vet.App. at 51. In the present case, the Board noted the apparent destruction of records. The Board also noted that VA's additional efforts to obtain records resulted in the discovery of SGO extracts. Furthermore, the appellant has not complained, before this Court or the Board, that the duty to assist was not satisfied, or that the Board failed to recognize its heightened duty to consider the benefit of the doubt rule, to assist in development of the claim, or to explain its decision. *See Russo, supra*. Thus, because VA met its duty to assist the appellant, and the appellant made no effort to challenge VA's assistance, the Court finds that the duty to assist was satisfied.

The appellant would have this Court develop an adverse presumption against the Secretary based on the 1973 fire at the NPRC. The appellant relies upon an article that concludes the origin of the fire was never determined. Walter W. Stender & Evans Walker, *The National Personnel Records Center Fire: A Study in Disaster*, 37 THE AMERICAN ARCHIVIST, 521, 544 (1974). There are existing presumptions for service connection that have been created by Congress and codified in statute. The existing presumptions recognized in the VA statutory scheme generally relate to circumstances involving combat. *See* 38 U.S.C. §§ 1116, 1117, 1118, 1133. The appellant does not argue that the presumption that he seeks is derivative of any of these presumptions, or is even implied by any other statute or regulation.

Furthermore, the Court has acknowledged widely accepted, nonstatutory presumptions relating to official acts. The presumption of regularity in mailing, and the presumptions of delivery and receipt are nonstatutory, judicially developed presumptions that avoid wasteful litigation about routine actions in the absence of clear evidence of nonperformance. *See Ashley v. Derwinski,* 2

Vet.App. 62, 65 (1992) (citing multiple United States Supreme Court decisions and holding that the presumption of regularity applies to official acts of public officers absent clear evidence to the contrary); *see also Matthews v. Principi*, 19 Vet.App. 23, 27 (2005) (describing the scope of the presumption). The appellant does not argue that the presumption he seeks is derivative of these or any nonstatutory presumption previously recognized by this Court.

Instead, the appellant argues that an adverse presumption against the Secretary should be adopted based solely on general principles of evidence and equity. This, the Court is unwilling to do where the appellant's argument does not apply to the facts of this case. As the appellant concedes, an adverse-presumption rule has historically been associated with bad-faith destruction of records. *See Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004); *see also Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985) (stating that bad-faith destruction of a document pertinent to an issue at trial gives rise to an inference against the party responsible for its destruction). Although recent cases have held that an adverse inference does not require a showing of bad faith and recognize that negligent destruction of documents should also be sanctioned in order to restore the evidentiary balance, the appellant has not demonstrated that either of those circumstances is present here. *See Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (recognizing that a rebuttable presumption can be created against the defendant where the defendant is responsible for the negligent loss or destruction of evidence essential to plaintiff's case); *Welsh v. United States*, 844 F.2d 1239, 1248 (6th Cir. 1988); *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991). Again, we reiterate that the appellant has not demonstrated that either bad faith or negligent destruction of documents was implicated in the 1973 fire at the NPRC. Hence, in the absence of the necessary factual predicate, we need not decide whether the presumption advanced by the appellant should be adopted.

Upon consideration of the foregoing, it is

ORDERED that the January 15, 2003, Board decision is AFFIRMED.

DATED: July 8, 2005                                          PER CURIAM.

4