# United States Court of Appeals for the Federal Circuit

05-7172

WILLIAM C. CROMER,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Michael A. Morin, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for claimant-appellant. On the brief was Mark R. Lippman, The Veterans Law Group, of La Jolla, California.

Michael J. Dierberg, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Deborah A. Bynum, Assistant Director. Of counsel were Richard J. Hipolit, Assistant General Counsel, and Ethan G. Kalett, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Retired Judge Donald L. Ivers

# United States Court of Appeals for the Federal Circuit

05-7172


WILLIAM C. CROMER,

                                        Claimant-Appellant,

v.


R. JAMES NICHOLSON,
Secretary of Veterans Affairs,

                                        Respondent-Appellee.

_____

DECIDED:  July 11, 2006
_____


Before BRYSON, GAJARSA, and LINN, Circuit Judges.

GAJARSA, Circuit Judge.

       William C. Cromer appeals from a decision of the United States Court of Appeals for Veterans Claims (the "Veterans Court") affirming a decision by the Board of Veterans Appeals (the "Board") denying his claim for service-connected disability. Cromer v. Nicholson, 19 Vet. App. 215 (2005) ("Cromer").  The parties assert jurisdiction pursuant to 38 U.S.C. § 7292.  For the reasons set forth below, we affirm.

## BACKGROUND

       The critical fact here at issue is the loss of Cromer's service medical records, which apparently were destroyed in a massive fire at the National Personnel Records Center in 1973.  The primary legal issues involve the appropriate burden of proof for

establishing service connection for disability in circumstances where the relevant records were lost while in the custody of the government.

Cromer served in the active-duty armed forces from September, 1945, through May, 1947. Cromer, 19 Vet. App. at 216. In 1993, he filed a claim for disability based on service-connected dementia allegedly caused when he "suffered a fever of 108 degrees while assigned at Ft. Sill, Oklahoma, during November 1945 related to consumption of milk contaminated with streptococci agent." Id. The record indicates that Cromer attempted to acquire his service medical records to support his claim, but was told by the National Personnel Records Center that his records were unavailable and "were likely destroyed in a fire in 1973." Id. In the absence of those records, Cromer supported his claim with a physician's statement indicating that his illness dated from his time in service. In addition, the Department of Veterans Affairs ("VA") sought and obtained other records on Cromer's behalf, including "hospital extracts from the Office of the Army Surgeon General . . . showing brief periods of hospitalization for pharyngitis and peritonsillar abscess in 1945." Id. The additional records did not directly support Cromer's claim.

The Veterans Administration Regional Office ("RO") denied the claim on May 25, 1994. Cromer then filed an application seeking to re-open his initial claim; the RO denied that application on April 6, 1996. Subsequently, in 1998, the Board remanded Cromer's case for further development.[1] The RO denied the remanded claim on July 26, 1999, concluding that no "new and material evidence" had been submitted sufficient to justify re-opening Cromer's claim. The Board affirmed that denial. While that

---

[1] Neither the decisions of the Veterans Court and the Board nor the parties' submissions to this court explain the reason for the 1998 remand.

decision was on appeal to the Veterans Court, the parties filed a joint motion seeking remand to the Board for further development and adjudication. The Veterans Court granted that motion on December 20, 1999. After further proceedings, the Board once again denied Cromer's claim. Before the Veterans Court, the parties filed another joint motion for remand, stating that Cromer had submitted new and material evidence sufficient to re-open his claim, and asking that the Board be permitted to review Cromer's case on the merits. On December 7, 2001, the Veterans Court granted that motion. After further proceedings, the Board denied Cromer's claim again, concluding that Cromer's "[d]ementia began many years after service and was not caused by any incident of service."

On appeal to the Veterans Court, Cromer did not challenge the Board's finding that "the preponderance of the evidence is against the claim for service connection for dementia." Instead, he raised only a single issue, arguing that the Veterans Court should have applied an "adverse presumption" favoring service connection in circumstances where medical records are lost or destroyed while in possession of the government. Cromer, 19 Vet. App. at 216.

On July 8, 2005, the Veterans Court affirmed the Board's decision. Id. at 219. Noting that Cromer raised only the adverse presumption issue, it concluded that "the appellant has not raised any issue contained in the Board's decision," and that therefore "those issues are deemed abandoned." Id. at 217. It nevertheless considered Cromer's adverse presumption argument. It noted that the presumption Cromer sought was rooted in no statutory provision or recognized nonstatutory rule, but was grounded "solely on general principles of evidence and equity." Id. at 218. It then discussed what

05-7172                                    3

it considered the general rule that the "adverse-presumption rule has historically been associated with bad-faith" or negligent destruction of records, and concluded that because Cromer had "not demonstrated that either bad faith or negligent destruction of documents was implicated in the 1973 fire" that destroyed Cromer's records, it "need not decide whether the presumption advanced by the appellant should be adopted." Id. This appeal followed.

STANDARD OF REVIEW

In reviewing a decision of the Court of Appeals for Veterans Claims, this court "shall hold unlawful and set aside any regulation or any interpretation thereof . . . that was relied upon in the decision" of that court and which we find to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or without observance of procedure required by law.  38 U.S.C. § 7292(d)(1).  We review issues of law without deference. Andre v. Principi, 301 F.3d 1354, 1358 (Fed. Cir. 2002).

DISCUSSION

A.    Subject Matter Jurisdiction

Neither party disputes this court's subject matter jurisdiction under § 7292, but we are obligated to consider the issue sua sponte if reason exists to doubt that jurisdiction applies.  Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir. 2004), cert. granted in part, 126 S.Ct. 543 (2005), cert. dismissed as improvidently granted, 2006 WL 1699360 (June 22, 2006); see also Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485-86 (Fed. Cir. 1998).

This court exercises jurisdiction over appeals from the Veterans Court "with respect to the validity of a decision of [that] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by [that] Court in making the decision." 38 U.S.C. § 7292(a) (2002). This court has interpreted its jurisdictional grant to permit review of "a decision of the Court of Appeals for Veterans Claims on a rule of law," even where that rule of law was not "relied on . . . by the Court of Appeals for Veterans Claims in making its decision," so long as "the decision below regarding a governing rule of law would have been altered by adopting the position being urged." Morgan v. Principi, 327 F.3d 1357, 1361, 1363 (Fed. Cir. 2003) (internal quotations omitted) (describing this circumstance as "case" jurisdiction, as opposed to "issue" jurisdiction).

Here, two incongruities in the Veterans Court's opinion raise the possibility that we lack jurisdiction under § 7292(a) and Morgan. First, it appears that the Veterans Court would have affirmed the Board's decision regardless of the outcome of the adverse presumption question. Noting that Cromer failed to "raise[ ] any issue contained in the Board decision," thereby waiving all such arguments, it concluded that "the Board decision must be affirmed." Cromer, 19 Vet. App. at 217. Thus, the Veterans Court arguably resolved Cromer's appeal independently of the adverse presumption issue, rendering its discussion of that issue dictum. In that circumstance, the Veterans Court's decision would not "have been altered by adopting the position urged," and we would arguably lack jurisdiction under Morgan and its progeny. Morgan, 327 F.3d at 1363; see also Wilson v. Principi, 391 F.3d 1203, 1208 (Fed. Cir. 2004) (quoting Morgan).

Second, by its own terms, the Veterans Court did not technically reach the question of whether an adverse presumption of the kind sought by Cromer should apply. The court clearly stated that "in the absence of the necessary factual predicate" for application of such a presumption—a finding of bad faith or negligence—"we need not decide whether the presumption advanced by the appellant should be adopted." Cromer, 19 Vet. App. at 219. If the Veterans Court affirmed without reaching the adverse presumption issue, its disposition of the case could not be altered by the adoption "of the position urged," and we again would lack jurisdiction under § 7292 and Morgan.

This is confusing, because Cromer appealed only one issue, and the Veterans Court, if its decision is read literally, declined to reach that issue. Nevertheless, we conclude that Cromer's appeal is properly before us. Although the Veterans Court's ruling is ambiguous in this regard, we interpret it to have reached the adverse presumption issue and decided it against Cromer. A contrary interpretation would be illogical, since it would result in the conclusion that the Veterans Court resolved the appeal without reaching the only issue that was properly before it. We therefore conclude that the Veterans Court resolved the presumption question in the government's favor.

We also conclude that a different resolution of the presumption issue would have altered the Veterans Court's disposition of the case. If the Veterans Court (and therefore the Board) erred in failing to apply the adverse presumption, then the Board's initial weighing of the evidence of service connection was also erroneous. Evidence that is insufficient to satisfy the preponderance standard in the absence of the

presumption is not necessarily insufficient to satisfy the preponderance standard if the presumption is operative. The conclusion that the adverse presumption should have applied to the service connection question would have required the Veterans Court to remand the case to the Board for further proceedings. We therefore have jurisdiction under the interpretation of § 7292 set forth in <u>Morgan</u>.

## B.     Justiciability

The government argues that Cromer's appeal is nonjusticiable because no relief would be available to him even if he prevailed on the adverse presumption issue. A claim is justiciable if it involves "a real and substantial controversy admitting of specific relief through a decree of a conclusive character." <u>Lewis v. Cont'l Bank Corp.</u>, 494 U.S. 472, 477 (1990). Here, the government argues that Cromer's appeal is nonjusticiable because

> [E]ven if this Court were to grant Mr. Cromer's request and create the presumption that he requests, this presumption would not affect the outcome of his case because: a) the presumption could be overcome by a preponderance of the evidence; b) the board has already concluded that the preponderance of the evidence demonstrated that his dementia is not service connected; and c) Mr. Cromer has not challenged the board's conclusion regarding the preponderance of the evidence.

Although the government's argument carries a certain superficial force, we disagree. Cromer's appeal, by arguing that the adverse presumption should be applied to the determination of service connection, inherently challenges the Board's application of the preponderance standard in making that determination. As we discussed above, evidence that is insufficient to satisfy the preponderance standard in the absence of the presumption is not necessarily insufficient to satisfy the preponderance standard if such a presumption is operative. A contrary ruling would render the presumption

05-7172                                                    7

superfluous. The better answer, we believe, is that the operation of the adverse presumption would require a reassessment of the evidence by the Board. Thus, Cromer's appeal is susceptible of relief and presents a controversy that is justiciable in this court.

## C. Adverse Presumptions

Cromer's claim breaks down into two components. First, he argues that because his medical records were in the custody of the government when they were destroyed by fire, the government should be presumed to have acted negligently in failing to preserve them. Second, he argues that once negligent destruction is presumed, an adverse presumption of service connection should be imposed against the government. Cromer's arguments in support of this double presumption lack merit.

First, neither presumption is rooted in any applicable statute, regulation, or judicial decision.[2] In fact, both presumptions are contrary to the general evidentiary burden in veterans' benefit cases, which requires that "a claimant has the responsibility to present and support a claim for [VA] benefits." 38 U.S.C. § 5107(a). The presumptions, by effectively shifting the burden of proof to the government, conflict with that standard. Second, Congress and the VA have expressly carved out exceptions to the general rule of § 5107(a) where they deemed a shift in the burden of proof to be

---

[2] With regard to the negligence presumption, we note that at common law, the loss by fire of bailed goods did not give rise to a presumption of bailee negligence. See, e.g., S. Ry. Co. v. Prescott, 240 U.S. 632, 640 (1916); Hammond v. United States, 173 F.2d 860, 863 (6th Cir. 1949). In Missouri, where the 1973 fire occurred, the bailor of destroyed goods has the burden of showing bailee's negligence, except in actions brought pursuant to a bailment contract. See Thummel v. Krewson, 764 S.W.2d 700, 705 (Mo. Ct. App. 1989). The government's custody of its own records is not a bailment in the classic sense, but the common-law rule is instructive in these circumstances. Following enactment of the Uniform Warehouse Receipts Act, some jurisdictions have reversed the common-law rule, but many—including Missouri—have not.

necessary or just—see, for example, 38 U.S.C. § 105(a) (creating a presumption that injuries incurred during active military service were incurred in the line of duty), and 38 U.S.C. § 1116 (creating a presumption of service connection for diseases associated with Agent Orange)—but have not done so here.

The VA is obligated by statute to "make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate" a veteran's claim for benefits. 38 U.S.C. § 5103A. The VA discharged that obligation here by seeking and obtaining alternative medical records to supplant the records apparently destroyed in the 1973 fire, and Cromer does not contend otherwise. The relief Cromer seeks would amount to a judicial amendment of the statutory duty to assist—a measure beyond the power of this court.

In addition, the VA, cognizant of the difficulties faced by veterans whose records have been lost, has enacted several regulations precisely to ease the evidentiary burdens faced by veterans whose records were lost in the 1973 fire. The VA Adjudication Manual provides a procedure for cases affected by the 1973 fire, requiring the VA to "assist the claimant in obtaining [medical] evidence from alternate or collateral sources" and listing ten alternate sources that "might substitute for service medical records in decisions relating to service connection for a disability." Similarly, in cases involving lost records, the Board has a heightened duty to explain its findings. See O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). In the absence of a statutory or constitutional imperative, it would be improper for this court to impose a judicial remedy to supplant or supplement the remedies and procedures already provided by Congress and the VA.

Finally, Cromer has identified no decision in which an adverse presumption or inference was drawn in the absence of bad faith or, at a minimum, negligence. Conceding this failure, Cromer asks this court to create a new rule for the admittedly unusual circumstances presented by the "paternalistic" and nonadversarial context of veterans' benefits. This we decline to do. Congress, the VA, and the courts have been aware of the challenges posed by the loss of records in the 1973 fire for more than thirty years, and have enacted procedures intended to ameliorate those challenges for veterans. That Cromer finds the procedures adopted by Congress and the Executive inadequate is not a sufficient basis on which this court can create a new rule that would alter the process for benefits claims. Accordingly, we affirm the decision of the Veterans Court.

AFFIRMED

No costs.