# United States Court of Appeals for the Federal Circuit

2007-7029

ALVA JANDREAU,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Ronald L. Smith, Disabled American Veterans, of Washington, DC, argued for claimant-appellant. With him on brief was Zachary M. Stolz.

Leslie Cayer Ohta, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director; and Mark A. Melnick, Assistant Director. Of counsel on the brief were Michael J. Timinski, Deputy Assistant General Counsel; and Y. Ken Lee, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Chief Judge William P. Greene, Jr.

# United States Court of Appeals for the Federal Circuit

2007-7029

ALVA JANDREAU,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED: July 3, 2007

_____

Before MICHEL, <u>Chief Judge</u>, and  BRYSON and DYK, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

Alva Jandreau ("Jandreau") appeals the judgment of the United States Court of Appeals for Veterans Claims ("Veterans' Court").  That court affirmed an earlier decision of the Board of Veterans' Appeals ("Board") that denied service connection for residuals of a right-shoulder dislocation.  We reject appellant's argument that the evidentiary standard should be relaxed, but hold that the Veterans' Court improperly held that lay evidence cannot be used to establish a medical diagnosis.  We remand for further proceedings consistent with this opinion.

BACKGROUND

Jandreau served honorably in the U.S. Army from May 1957 to May 1959.  In

May 1997, Jandreau filed a claim with the Veterans Administration ("VA") for residuals of a right shoulder injury. He asserted that the injury to his shoulder had occurred during basic training at Fort Dix, when he had dislocated his shoulder and had been treated for his injury on the base. The VA attempted to obtain Jandreau's service medical records, but was unable to do so because those records had been destroyed in a 1973 fire at the National Personnel Records Center in St. Louis.

In an effort to provide the necessary evidence as support for his claim of service connection despite the destruction of the records, Jandreau submitted a number of documents to the VA. He submitted a statement from a fellow serviceman, Frederick Burnham, averring: "I remember Alva [Jandreau] being in great pain after dislocating his shoulder while in training."[1] J.A. at 35. Jandreau also submitted multiple medical reports, detailing medical examinations conducted in 2000. Those reports stated that Jandreau suffered pain, arthritis and rotator cuff impingement in his right shoulder. In particular, one report by Dr. Timothy Snell, M.D., assesses Jandreau's condition as "[r]ight shoulder pain, most likely sequelae of his dislocation of the shoulder." Id. at 7. Jandreau also submitted a radiology report indicating a history of right-shoulder dislocation and pain and documents indicating treatment for that condition.

The VA denied service connection because "no medical evidence was received showing continuity of treatment for the right shoulder since discharge from military service." J.A. at 78. Jandreau appealed to the Board, which issued its decision on May

---

[1] The VA specifically allows veterans to introduce into evidence statements of fellow service members when records were destroyed in the 1973 fire. See Veterans Benefits Administration Adjudication Procedures Manual M21-1MR, part III, subpart iii, ch. 2, § E.27.b (2005), available at http://www.warms.vba.va.gov/admin21/ m21_1/mr/part3/subptiii/ch02/ch02_sece.doc, page 2-E-5.

27, 2004. The Board denied service connection for Jandreau's injury, reasoning that Dr. Snell's report merely recorded Jandreau's assertion that he had suffered a dislocation but did not diagnose a dislocation when it occurred. The Board stated that "the Board is not required to accept evidence that is simply information recorded by a medical examiner, unenhanced by medical opinion." J.A. at 13. It further concluded that "[m]edical diagnosis and causation involve questions that are beyond the range of common experience and common knowledge, and require the special knowledge and experience of a trained physician." Id. The Board rejected the testimony of both Jandreau and his fellow serviceman, because "[w]hile the veteran and his buddy are arguably competent to present evidence concerning the occurrence of an injury, they are not competent to present evidence to establish the etiology of a current disability." Id. The Board thus found that "there is no competent evidence on file linking the veteran's current right shoulder disabilities to service or to any incident therein." Id.

Jandreau appealed to the Veterans' Court, which affirmed the Board's decision. The court concluded that the Board did not err in rejecting lay evidence that Jandreau suffered a dislocation during service and "did not err in discounting Dr. Snell's medical opinion because it was premised on a fact that Mr. Jandreau was not competent to establish—that he had dislocated his shoulder during service." Jandreau v. Nicholson, No. 04-1254, slip op. at *3 (Vet. App. Aug. 24, 2006). The court held that "[w]here the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is required; however, lay assertions of symptomatology or injury may suffice where the determinative issue is not medical in nature." Id. Thus the court held that "whether [Jandreau] experienced a dislocation of his shoulder requires a medical

diagnosis." Id.

Jandreau timely appealed the decision of the Veterans' Court to this court. We have jurisdiction pursuant to 38 U.S.C. § 7292(a). Cromer v. Nicholson, 455 F.3d 1346, 134-49 (Fed. Cir. 2006).

DISCUSSION

I

On appeal Jandreau first argues that the destruction of records while in the government's custody should result in a relaxed evidentiary standard for veterans. We reject this argument.

The statute provides that "a claimant has the responsibility to present and support a claim for [VA] benefits." 38 U.S.C. § 5107(a). In our decision in Cromer, 455 F.3d 1346, we considered and rejected the argument that service connection should be presumed when a veteran's medical records are destroyed while in the government's custody. 455 F.3d at 1350-51. In Cromer, the medical records were destroyed in the same 1973 fire at the National Personnel Records Center that resulted in the presumed destruction of Jandreau's records. See id. at 1347. We reasoned that the veteran has the evidentiary burden of establishing his claim in veterans' benefits cases and that Congress and the VA have specifically shifted that burden in particular cases, but have not done so here. Id. at 1350-51. We further noted that the VA has eased the evidentiary burden on veterans whose records were lost in the 1973 fire, but has not provided for an adverse presumption of service connection. Id. at 1351. [2]

---

[2] See Veterans Benefits Administration Adjudication Procedures Manual M21-1MR, part III, subpart iii, ch. 2, § E.27.b (2005), available at http://www.warms.vba.va.gov/admin21/m21_1/mr/part3/subptiii/ch02/ch02_sece.doc,

Jandreau on appeal does not deny that our decision in <u>Cromer</u> is controlling on the issue of burden shifting, but asserts that his claim is different because he asserts only that his burden of proof should be "somewhat relaxed." Reply Br. at 1. To the extent Jandreau seeks a modification of his burden of proof, we see no material difference between his argument and the argument we rejected in <u>Cromer</u>. To the extent that Jandreau seeks to invoke traditional evidentiary adverse inference rules, we find those rules to be inapplicable, even if we were to agree that they apply in the context of VA proceedings. The general rules of evidence law create an adverse inference when evidence has been destroyed and "(1) . . . the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) . . . the records were destroyed with a culpable state of mind; and (3) . . . the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002) (internal citation and quotation marks omitted); <u>see also</u> 31A C.J.S. <u>Evidence</u> § 168 (2007); 2 Kenneth S. Brown, McCormick On Evidence § 264 (6th ed. 2006). The burden is on the party seeking to use the evidence to show the existence of each criterion. <u>Residential Funding</u>, 306 F.3d at 107. There is no claim here that the records were willfully or recklessly destroyed. While some circuits have held that a showing that a party was negligent in

---

page 2-E-5 (listing alternate documents, such as statements from service medical personnel, statements of fellow service members, letters, photographs or prescription records, state or local accident and police reports, that the veteran can provide to substitute for documents destroyed in the 1973 fire).

the destruction of records creates an adverse inference,[3] we need not decide whether that is the correct rule because Jandreau conceded at oral argument that there was no evidence of government negligence leading to the destruction of the records.

II

Jandreau's second argument on appeal is that the Veterans' Court erred in holding that that lay evidence is insufficient "where the determinative issue involves either medical etiology or a medical diagnosis," and that accordingly, "whether [Jandreau] experienced a dislocation of his shoulder requires a medical diagnosis." Jandreau, No. 04-1254, slip op. at *3. We agree. The holding of the Veterans' Court is inconsistent with our decision in Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006), which was decided shortly before the decision of the Veterans' Court in this case.

Buchanan involved a situation where the veteran claimed service connection resulting from schizophrenia that allegedly began during his service. The veteran sought to establish service connection by submitting affidavits of relatives and his commanding officer testifying that his symptoms of paranoid schizophrenia first manifested themselves during service, as well as a medical opinion from 2001, almost twenty years after the conclusion of his service, that stated that his symptoms first

---

[3] See Residential Funding, 306 F.3d at 108; Rogers v. T.J. Samson Cmty. Hosp., 276 F.3d 228, 232 (6th Cir. 2002). Other circuits have held mere negligence insufficient to apply an adverse presumption. See, e.g., Aramburu v. The Boeing Co., 112 F.3d 1398, 1407 (10th Cir. 1997); Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997); Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995); Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975); see also Med. Lab. Mgmt. Consultants v. Am. Broad. Co., 306 F.3d 806, 824 (9th Cir. 2002); Jackson v. Harvard University, 900 F.2d 464, 469 (1st Cir. 1990).

appeared during service. Id. at 1333. The Board determined that lay evidence without confirmatory documentary evidence cannot be credible, and the Veterans' Court affirmed. Id. at 1337. We reversed, holding that numerous veterans' statutes and regulations require consideration of lay evidence. Id. at 1334-35; see also 38 U.S.C. §§ 1154(a), 5107(b); 38 C.F.R. §§ 3.303(a), 3.307(b). In other words we found that the statute makes clear that, in the veterans' context, traditional requirements for admissibility have been relaxed. See 38 U.S.C. § 5107(b) ("The Secretary shall consider all . . . lay and medical evidence of record in a case . . . with respect to benefits."). We concluded that "lay evidence is one type of evidence that must be considered" and that "competent lay evidence can be sufficient in and of itself." Buchanan, 451 F.3d at 1335. We noted that the Board retains discretion to make credibility determinations and otherwise weigh the evidence submitted, including lay evidence. Id. at 1336-37. The rule announced in Buchanan is particularly important when veterans' service medical records have been destroyed. Unless lay evidence were allowed, it would be virtually impossible for a veteran to establish his claim to service connection in light of the destruction of the service medical records.

Under Buchanan the conclusion of the Veterans' Court that "competent medical evidence is required . . . [when] the determinative issue involves either medical etiology or a medical diagnosis" is too broad. Jandreau, No. 04-1254, slip op. at *3. Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition,[4] (2) the layperson is

---

[4] Sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer.

reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Contrary to the Veterans' Court, the relevance of lay evidence is not limited to the third situation, but extends to the first two as well. Whether lay evidence is competent and sufficient in a particular case is a fact issue to be addressed by the Board rather than a legal issue to be addressed by the Veterans' Court. We do not reach the question whether in the present case the lay evidence is competent and sufficient to establish shoulder dislocation, a matter beyond our jurisdiction. We remand to the Veterans' Court so that it may remand to the Board for further consideration under the correct legal standard.

CONCLUSION

For the foregoing reasons, the decision below is

REVERSED AND REMANDED

COSTS

No costs.