﻿Citation Nr: 19172646
Decision Date: 09/19/19 Archive Date: 09/18/19

DOCKET NO. 18-42 720
DATE: September 19, 2019

ORDER

Entitlement to service connection for a cervical spine disability is denied.

REMANDED

Entitlement to service connection for thoracolumbar spine disability is remanded.

FINDING OF FACT

The preponderance of the evidence is against finding that the Veteran’s cervical spine disability began during active service, was incurred within a year of service, or is otherwise related to an in-service injury or disease.

CONCLUSION OF LAW

The criteria for service connection for a cervical spine disability are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the United States Navy from October 1974 to October 1976. 

Entitlement to service connection for cervical disability

The Veteran is seeking service connection for a cervical disability. In August 2018 the Veteran wrote that he had a car accident while on active duty, that the medical reports show damage to his cervical spine, and that his pain had progressed to the point of making him unable to work or drive. 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004). Service connection will also be presumed for certain chronic diseases, including arthritis, if manifest to a compensable degree within one year after discharge from service. See 38 C.F.R. §§ 3.307, 3.309.

A layperson is generally incapable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183, 186 (1997), aff’d sub nom., Routen v. West, 142 F.3d 1434 (Fed. Cir. 1998). However, lay evidence can be competent and sufficient to establish a diagnosis of a condition when: (1) a layperson is competent to identify the medical condition; (2) the layperson is reporting a contemporaneous medical diagnosis; or, (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

Lay testimony is competent when it pertains to the readily observable features or symptoms of injury or illness and “may provide sufficient support for a claim of service connection.” Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also 38 C.F.R. § § 3.159(a)(2). A determination as to whether medical evidence is needed to demonstrate that a Veteran presently has the same condition he or she had in service or during a presumptive period, or whether lay evidence will suffice, depends on the nature of the Veteran’s present condition (e.g., whether the Veteran’s present condition is of a type that requires medical expertise to identify it as the same condition as that in service or during a presumption period, or whether it can be so identified by lay observation). See Barr v. Nicholson, 21 Vet. App. 303, 310 (2007).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § § 3.102. See also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The question for the Board is whether the Veteran has a current disability that began during or within a year of service, or is at least as likely as not related to an in-service injury, event, or disease.

The Veteran was afforded examinations in July 2017 and July 2018 at which he was diagnosed with a cervical strain. Therefore, the record shows that the Veteran has a current cervical spine disability. 

The service treatment records show that in December 1975 the Veteran sustained a left clavicle fracture, a laceration on his posterior scalp, and a questionable T3 and T4 fracture after being hit by a motor vehicle. At January 1975 treatment he reported pain in the base of the head and back. The assessment was musculoskeletal pain secondary to trauma and tension headaches. There were no abnormalities related to the cervical spine noted at the October 1976 discharge examination.

The determining factor here is whether there is a nexus, or link, between the Veteran’s cervical disability and any event, injury, or disease in service, to include when he was hit by an automobile. In that regard, a preponderance of the evidence is against the Veteran’s claim.

The July 2017 VA examiner opined that the Veteran’s cervical spine issues are more likely related to a degenerative process associated with aging. The cervical spine condition is less likely than not caused by the claimed in-service injury, event or illness, including the in-service January 1976 treatment for pain at the base of head and back following the motor vehicle accident. The VA examiner noted that the Veteran’s separation examination noted no abnormalities of the spine. 

The July 2018 examiner opined that it is less likely as not that the Veteran’s cervical stain was incurred in service or was caused by the claimed in-service injury, event, or illness. It was noted that the service treatment records do not show a diagnosis or treatment for a neck condition, or any related cervical spine condition, during service. The examiner further noted that while the record shows a motor vehicle accident with thoracic injury in 1975, there was no indication of progressive and/or chronic neck pain during or after active duty. 

While the Veteran has made statements to the effect that his cervical spine disability is related to service, he is not competent to make such a determination, because the question of whether it is related to service is a medical question. His statements on etiology are therefore afforded little, if any, probative value. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). 

The examiners’ June 2017 and June 2018 opinions that the Veteran’s cervical disability is less likely than not related to an in-service injury, event, or disease, including the Veteran being hit by an automobile in December 1975, are of probative value. The opinions are probative because they are based on an accurate medical history and provide an explanation that contains clear conclusions and supporting data. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). There are no competent opinions that the Veteran’s cervical spine disability is related to service.

Because the evidence preponderates against the claim for service connection for a cervical spine disability, the benefit-of-the-doubt doctrine is inapplicable, and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 55-57.

REASONS FOR REMAND

Entitlement to service connection for thoracolumbar disability is remanded.

At a March 2017 VA examination, the examiner noted that the Veteran had a motor vehicle accident in 1975 resulting in a fracture of his left clavicle and questionable fracture at T3-T4. It was noted that in 1975 a consulting orthopedist opined that the T3 fracture was likely an old fracture. The examiner noted a prior motor vehicle accident in 1973 and opined that the Veteran’s current thoracolumbar disability was “less likely to be a progression of his thoracic [fracture] from 1975 but more likely to be sec[ondary] to a recent injury.” Service treatment records in December 1975 show that when the Veteran was hospitalized related to being hit by an automobile, it was the opinion of the orthopedics department that the anterior fracture of T3 was an old fracture and of no significance. However, the examiner stated that the Veteran’s current disability was “less likely to be a progression of his thoracic fracture [fracture] from 1975.” Thus, the examiner stated there was an in-service thoracic fracture but also referenced the orthopedist department statement that the fracture at T3 was an old fracture and of no significance. The examiner did not address this conflict. Further the examiner did not address whether the 1975 automobile accident in general could be related to the Veteran’s current disability regardless of a fracture at T3. Therefore, the opinion is insufficient.

The Veteran had an VA examination arranged through VA in June 2018. The examiner opined that it is at least as likely as not the Veteran’s degenerative arthritis of the spine is related to military service. The examiner stated the records showed that the Veteran was diagnosed with lower back pain, a back injury due to a motor vehicle accident, and records showed possible T3-T4 fracture treated while on active duty. This examiner did not address the in-service treatment note that the fracture at T3 was an old fracture and of no significance. Therefore, the opinion cannot be given probative value. A new medical opinion must be obtained before the claim can be decided on the merits.

VA treatment records to July 2017 have been associated with the claims file. The RO should attempt to obtain all relevant VA treatment records dated from 

July 2017 to the present, while the claim is in remand status. Bell v. Derwinski, 2 Vet. App. 611 (1992).

The matters are REMANDED for the following action:

1. Ask the Veteran to identify, and provide appropriate releases for, any care providers who may possess new or additional evidence pertinent to his thoracolumbar spine disability. If any of the records sought are not available, the record should be annotated to reflect that fact, and the Veteran and his representative should be notified. There must be two attempts made to request private treatment records.

2. Obtain VA treatment records from July 2017 to the present.

3. After the foregoing development has been completed, to the extent possible, make arrangements to provide the record on appeal to one of the examiners who previously offered opinions with respect to the etiology of the Veteran’s thoracolumbar disability in March 2017 and June 2018. If neither examiner is available, this request should be sent to another examiner.

The examiner should be asked to review the record and prepare a supplemental report as to whether it is at least as likely as not (i.e., whether it is 50 percent or more probable) that the Veteran’s thoracolumbar spine disability that had its onset during or within a year of service, or is otherwise related to the Veteran’s service. 

(Continued on the next page)

 

In so doing, the examiner should discuss the December 1975 treatment note stating that an orthopedist opined that the fracture at T3 was an old fracture and of no significance. 

A complete rationale for all opinions expressed must be provided. If the examiner cannot provide his requested opinion without resorting to speculation, he should state why that is the case.

 

 

SCOTT SHOREMAN

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. Smith, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.