Citation Nr: 1443654 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 02-16 322 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Winston-Salem, North Carolina



THE ISSUE

Entitlement to service connection for the cause of the Veteran's death. 



REPRESENTATION

Appellant represented by: Robert V. Chisholm, Attorney at Law



ATTORNEY FOR THE BOARD

M. Mac, Counsel


INTRODUCTION

The Veteran had active service from February 1967 to September 1972. He died in July 1973. The appellant is the Veteran's surviving spouse.

This matter initially came to the Board of Veterans' Appeals (Board) on appeal from a rating decision in February 2000 by the RO.

The claim was processed using the Veterans Benefits Management System (VBMS). The documents in Virtual VA are either duplicative of the evidence of record or are not pertinent to the present appeal. 

In January 2005, the Board reopened the previously denied claim of service connection for the cause of the Veteran's death and remanded the matter for further development of the record.

The Board again remanded the case to the RO via the Appeals Management Center (AMC) in May 2006.

In a decision promulgated in June 2007, the Board denied the appellant's claim of service connection for the cause of the Veteran's death. The appellant then appealed the decision to the United States Court of Appeals for Veterans Claims (Court).

The Court issued a March 2009 Memorandum Decision that affirmed the Board decision. However, the Federal Circuit vacated the Board decision in September 2009. 

As a result, in February 2010, the Court issued a memorandum decision that vacated the June 2007 decision of the Board and remanded the matter to the Board for further consideration.

In October 2010, the Board remanded the matter to the RO for additional development. 

In a September 2011 decision, the Board again denied the appellant's claim of service connection for the cause of the Veteran's death.

In an April 2012 Order, the Court granted a Joint Motion for Remand of the parties and vacated the September 2011 decision of the Board. 

In June 2013 the Board remanded the issue for further development. 

 Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2013). 38 U.S.C.A. § 7107(a)(2) (West 2002).



FINDINGS OF FACT

1. The Veteran died in July 1973; the cause of death was deemed to be an accidental drowning at a swimming pool. 

2. The Veteran is shown as likely as not to have developed an innocently acquired psychiatric disorder variously described as a major depressive disorder or a psychosis during his period of active duty that included service in the Republic of Vietnam. 

3. The Veteran's service-incurred innocently acquired psychiatric disorder to include that of major depressive disorder and a psychosis is shown as likely as not to have contributed substantially or materially in producing his death by drowning. 



CONCLUSIONS OF LAW

1. By extending the benefit of the doubt in favor of the appellant, the Veteran's innocently acquired psychiatric disability to include a major depressive disorder and psychosis was due to a disease or injury that was incurred in active service. . 38 U.S.C.A. §§ 1110, 1112, 1310, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.303, 3.304(f), 3.307, 3.309, 3.312 (2013). 

2. By extending the benefit of the doubt in the appellant's favor, a service-connected disability contributed materially or substantially in producing the Veteran's death. 38 U.S.C.A. §§ 1110, 1112, 1310, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.303, 3.304(f), 3.307, 3.309, 3.312 (2013). 



REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veterans Claims Assistance Act of 2000 

In light of the favorable determination to grant entitlement to service connection for the cause of the Veteran's death, which represents a full grant of the benefit sought, VA's duties to notify and assist are deemed fully satisfied and there is no prejudice to the Appellant in proceeding to decide the issue on appeal. See 38 U.S.C.A. 
§§ 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159.


Legal Criteria

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated during active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303.

For a Veteran who served 90 days or more of active service after December 31, 1946, there is a presumption of service connection for psychoses, if the disability is manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307, 3.309. 

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "Chronic." 

When the disease entity is established, there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303(b).

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004), citing Hansen v. Principi, 16 Vet. App. 110, 111 (2002).

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. 
§ 3.304(f). 38 C.F.R. § 4.125(a) requires that diagnoses of mental disorders conform to the Diagnostic and Statistical Manual for Mental Disorders (DSM-IV).

To establish service connection for the cause of a veteran's death, the evidence must show that a disability incurred in or aggravated by active service was either (1) the principal (primary) cause of death or (2) a contributory cause of death. To be considered a principal (primary) cause of death, a service-connected disability must have been singly or jointly with some other condition the immediate or underlying cause of death or have been etiologically related to the cause of death. 38 C.F.R. 
§ 3.312(b).

For a service-connected disability to be a contributing cause, it must have substantially or materially contributed to a veteran's death; it is not sufficient to show that it casually shared in producing death, but rather there must be a causal connection. A contributory cause of death is inherently one not related to the principal cause. 38 U.S.C.A. § 1310; 38 C.F.R. § 3.312.

The issue involved will be determined by exercise of sound judgment, without recourse to speculation, after a careful analysis has been made of all the facts and circumstances surrounding the death of the veteran, including, particularly, autopsy reports. 38 C.F.R. § 3.312. 

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Appellant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

When there is an approximate balance of positive and negative evidence as to any issue material to the determination, the benefit of the doubt is afforded to the appellant.


Analysis

The appellant contends that the Veteran's death was the result of a psychiatric disorder that was related to service. 

The record shows that the Veteran died in July 1973. The death certificate lists the cause of death as an accidental drowning at a swimming pool.

The Veteran's death was investigated, and an autopsy was performed. The results of the July 1973 autopsy were that the Veteran died as a result of drowning and that there was no anatomical reason that would have produced the drowning. 

It was noted as part of the report that the Veteran had been seen swimming about ten minutes prior to being found when another individual stepped on him in shallow water. 

Further, it was noted that, because the Veteran's wife had voiced her suspicion that he was taking drugs, an autopsy was performed. 

A July 1973 investigative report found that the Veteran died by accidental drowning and noted that the blood alcohol testing was negative.


Psychiatric Disorder During Veteran's Lifetime

At the time of his death, the Veteran was not service connected for any disability. 

The Veteran's personnel records show that he served in the Republic of Vietnam from November 1967 to November 1968 and was a radio repairman. 

The first question is whether the Veteran had a psychiatric disorder during his lifetime that was related to service, to include whether there was a link between a diagnosis of PTSD and an in-service stressor as well as whether he had any other psychiatric disorders that were related to service. 

The service treatment records show that the Veteran reported having excessive worrying on a report of medical history dated in November 1966 prior to entrance into service in February 1967. This was noted to be a mild anxiety reaction on the associated report of medical examination. However, the examiner evaluated the Veteran's psychiatric status as normal. 

The separation examination report and the accompanying report of medical history were negative for psychiatric complaints, findings or diagnosis. Nevertheless, during service, the Veteran was noted to have complaints of progressively increasing nervousness as well as other symptoms. He reported that this had been occurring for 6 to 8 months. The impression was that of anxiety with an underlying depression. He was also put on medication. See April 1970 service treatment record.

In November 1970, during service, the Veteran reported being nervous since he left the Republic of Vietnam in 1968. There was no improvement in his symptoms on medication. A May 1971 record noted that he taking valium. 

An August 1971 record showed that the Veteran injured his right hand when he struck it against an object. The X-ray studies showed that he fractured his fifth metacarpal.

The record shows that the Veteran received an undesirable discharge due to a period of being AWOL (absent without leave); however, the discharge was upgraded to a general discharge under honorable conditions in February 1975.

The lay statements submitted in 1975 and 1976 from a friend, a family member, and a lawyer indicated that the Veteran had changed after returning from service and was described as unfriendly, shy, nervous and at times disoriented. 

In January 1976, the appellant testified at a hearing that the Veteran was very nervous after he returned from Vietnam, brought guns into the house, hit the wall, and broke things. There were times, she reported, when he was so nervous he could not hold anything. She was not aware that he was trying to commit suicide. 

The Veteran was noted to have drowned at a recreation center where the appellant worked, but no one saw or heard him. He was found in only four feet of water and was noted to have been a good swimmer. The appellant believed that his nervous condition contributed to his death. 

An October 1999 letter from a psychiatric nurse noted that she worked with the appellant who was a social worker. The nurse reviewed the evidence, to include the service treatment records and opined that the Veteran had a medical disability resulting from or aggravated by his service as shown by his statements, physicians' statements, and his wife's statements of his behavioral changes since returning from service. 

In a June 2004 letter, a private psychiatrist noted that he had reviewed the records given to him by the appellant and that there was evidence consistent with a mental illness, such as some sort of anxiety disorder, as well as treatment with medication. He believed the psychiatric nurse was probably correct regarding the presence of an anxiety disorder. 

In a statement dated in July 2004, the appellant stated that the Veteran had symptoms of PTSD that included nervousness, sleep impairment, and difficulty developing close relationships. 

In August 2010, the appellant submitted a letter that described the Veteran's drug and alcohol use. She also described his behavioral changes that included being withdrawn/antisocial, punching walls, putting a gun to her head, and wrecking his car several times. She and her child were reported to have lived in fear due to his behavior that included the expression of suicidal thoughts. She noted that she was a medical social worker with training and knowledge of the DSM-IV. It was her belief that the Veteran's symptoms, behavior and adjustment problems were symptoms consistent with a DSM-IV diagnosis. 

In June 2012 the Veteran's cousin stated that, after service, the Veteran was different. He reported that, on the day before they went swimming, the Veteran seemed very down. On the day he died, they decided to go swimming. He kept getting in and out of the water, when they did not see him in the water they thought he was out. When he was found him in the water, they could not believe it because the Veteran was a good swimmer.

In a statement in July 2012, a family friend reported that, prior to service, the Veteran was nice and friendly and that, after service, he was jumpy, would stare off into space and would just start laughing at nothing. 

In July 2012, the appellant stated that the Veteran changed when he came back from Vietnam. She explained that he was tense and frightening and that she was afraid to sleep with him as he would suddenly jump out of bed and look for someone. She reported that the Veteran always was depressed and spoke about suicide. On multiple occasions, he drew a gun on her and her cousin. He also was physically abusive and drove recklessly. 

The Board finds that the Appellant's testimony and statements are competent and credible, as she is competent to report observable symptoms and her statements are consist with the other evidence of record discussed above. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006).

In September 2012 a private opinion was received from Dr. J.P.C., Ph.D., who was a Chief of the Outpatient Psychiatry Department and later became a Chief of the PTSD Clinic for combat veterans. After thoroughly reviewing the file, to include the service treatment records and the lay statements, the examiner noted that, in Vietnam, the Veteran was a radio repairman and that this was a particularly dangerous military occupational specialty in the field as the Veteran was a marked man. He stated that the Veteran was never adequately treated for anxiety and depression in the military. The examiner found it significant that the appellant reported that the Veteran experienced visual and auditory hallucinations, that his behavior and speech were disorganized, and that he was impulsive. 

The physician concluded that the Veteran's anxiety symptoms were consistent with a diagnosis of PTSD and noted that VA did not recognize a PTSD diagnosis until July 1988, many years after the Veteran's death. 

The physician opined that the Veteran developed PTSD per the DSM criteria as result of his service in the Republic of Vietnam as a field radio operator during the most difficult year of the war, the Tet Offensive. He developed physical problems such as alopecia, vomiting, painful stomach cramps, problems with nerves and weight loss and was treated for his nerves during service. 

The physician stated that in his professional opinion with a reasonable degree of psychological certitude that it was at least as likely as not that the Veteran developed two co-morbid disorders that emerged shortly after PTSD, namely psychotic disorder and major depressive disorder. The physician opined that, with a reasonable degree of psychological certitude, it was at least as likely as not that the Veteran was experiencing psychosis to a degree of 10 percent or more within one year of his discharge from service. 

In December 2012 an opinion was obtained from the Veteran's Health Administration (VHA). The physician was a board-certified psychiatrist. The examiner opined that it was at least as likely as not that the Veteran acquired a psychiatric disability during his period of active service. He concluded that it was likely that the Veteran had developed an anxiety disorder, as there was frequent mention of anxiety, "nerves" and some symptoms of PTSD, as well as heavy alcohol use and cannabis use. He noted that there was no mention of common depressive disorder symptoms and that it was not at least as likely as not that the Veteran acquired a major depressive disorder in the first year after his discharge. He was not treated for psychosis (the medications prescribed were commonly used to treat anxiety) and the symptoms described would be better accounted for by either an anxiety disorder or more likely cannabis abuse. The examiner opined that it was not at least as likely as not that the Veteran developed a psychotic disorder in the first year after his discharge from active service. 

In an addendum opinion in February 2013, the private examiner, Dr. J.P.C., responded to the opinion of December 2012. Dr. J.P.C. reiterated his opinion that Veteran's acquired a psychiatric disorder during his period of active service including g PTSD for the reasons explained in his September 2012 opinion. 

Dr. J.P.C. also reiterated that it was at least as likely as not that the Veteran acquired a major depressive disorder or a psychotic disorder in the first year after his discharge from service. He stated that he disagreed with the determination that the Veteran did not acquire a major depressive disorder or a psychotic disorder during his first year after discharge from service. 

Dr. J.P.C. added that, in the DSM-IV, comorbid diagnoses could precede, follow or emerge concurrently with the onset of the primary diagnosis. He noted that, per the DSM-IV, PTSD was associated with increased rate of major depressive disorder and substance-related disorder. He further explained that service treatment records indicated that the Veteran suffered from depression. 

There were noted to have been several incidents during service when the Veteran injured his hands and wrists and were indicative of depression and self-destructive behavior. The physician also pointed to the service treatment record in 1970 that showed anxiety partially concealing underlying depression. 

As for a psychosis, the physician stated that the majority of males exhibit psychosis between the ages of 18 and 25. The Veteran was 21 when he was in Vietnam. There was an underlying predisposition to psychosis that emerged under stressful conditions and the Veteran's service in Vietnam was extremely stressful. 

Dr. J.P.C. further noted that, after service, the Veteran was a changed man. His behavior was extremely erratic and impulsive, and he engaged in behavior which could have severely hurt or killed people. In addition to his two comorbid disorders, major depressive disorder and the psychotic disorder, the Veteran was trying to self-medicate by using alcohol and cannabis. 

The Board notes that, in December 2005, a VHA opinion had been obtained whereby a different examiner concluded that the Veteran was not suffering from a psychiatric disorder that had its clinical onset in service and caused or contributed materially to his demise. 

However, as noted by the parties to the Joint Motion for Remand in April 2012, this opinion was deemed to be inadequate as the examiner did not appear to consider the appellant's description of the Veteran's in-service and post-service symptomatology. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). As the opinion is inadequate, it is of limited probative value. 

In sum, the probative evidence shows that the Veteran had an anxiety disorder that was due to his active duty. The evidence is in relative equipoise as to whether the Veteran had PTSD that was related to a corroborated in-service stressor. The evidence is in relative equipoise as to whether the Veteran had major depressive disorder that is shown as likely as not to be due to his period of active duty. 

The evidence is in relative equipoise as to whether the Veteran had psychosis that was manifested to a compensable degree within one year following his separation from service. 

By extending the benefit of the doubt to the appellant, the Board finds that the Veteran's psychiatric disorder diagnosed as PTSD, major depressive disorder, psychosis, and anxiety disorder, was due to disease or injury that was incurred during his period of active service. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 3.303(b).


Cause of Death

As to the second question of whether a service-connected disability caused or contributed substantially or materially to cause the Veteran's death, there is conflicting evidence. 

To the extent that the Veteran's death certificate lists the cause of death as an accidental drowning at a swimming pool, there are contradictory opinions as to whether the Veteran's psychiatric disorder caused or contributed substantially or materially in producing his death.

In September 2012, Dr. J.P.C. opined that with a reasonable degree of psychological certitude that the Veteran's PTSD, major depressive disorder, and psychotic disorder, resulted in or contributed substantially to the Veteran's death. 

The physician noted that the Veteran repeatedly told his wife that he wanted to die and that his self-destructive acts, rash and impulsive behavior all indicated that he wished to die. He had auditory and visual hallucinations that were too much for him to handle and became more depressed and alienated himself from others. For these reasons, the physician concluded that the Veteran's death was not at least as likely as not an accident and instead was due to his psychosis, PTSD and major depressive disorder. 

In December 2012, the VHA medical reviewer concluded that the Veteran's death was accidental and that it was not as likely as not that an acquired psychiatric disability caused or contributed substantially in producing the Veteran's death by drowning. 

This examiner determined that there was nothing in the claims file to indicate a link between the psychiatric disorder and his death, noting that suicide by drowning although known to occur, was among the least common methods of suicide accounting for fewer than one percent of all suicides in non-coastal areas and less than 2 percent overall. 

Furthermore, suicide was a rare cause of drowning, encompassing about 4 percent of the total who do drown. The VHA examiner found that the statistics made it likely that the coroner was correct in determining that this was an accidental death even if a mental disorder was present. 

Lastly, the examiner concluded that it was not at least as likely as not that the Veteran's death was the result of mental unsoundness due to inability to realize the consequences of his actions or resist an impulse to take actions. 

Dr. M.D. explained that he reviewed the entire claims file and did not find any evidence that the Veteran had the inability to realize the consequence of his actions or resist impulses as these would more likely be attributes of a primary psychotic disorder, rather than an anxiety disorder. The examiner reiterated his opinion that the Veteran most likely had an anxiety disorder and not a psychotic disorder. 

In response to the above opinion, in February 2013 Dr. J.P.C. continued to conclude that the Veteran's acquired psychiatric disorder of PTSD, the comorbid disorders which emerged, major depressive disorder and psychosis, and the Veteran's attempt to self-medicate with alcohol and drugs, all contributed substantially in producing the Veteran's death by drowning. 

Although Dr. J.P.C acknowledged that the coroner's report stated that the Veteran's death was accidental by drowning, he found it significant that the Veteran was a competent swimmer and was in water not more than 4 feet deep. He noted that the coroner's test for alcohol was negative, but a drug test was not performed. 

Lastly, Dr. J.P.C. concluded that it was at least as likely as not that the Veteran's death was the result of mental unsoundness due to his inability to realize the consequences of his actions or resist an impulse to take such actions. Dr. J.P.C. disagreed with Dr. M.D's opinion that the Veteran did not have PTSD, a psychotic disorder, and major depressive disorder. He disagreed with Dr. M.D's opinion that the Veteran's death was not the result of mental unsoundness. 

Dr. J.P.C. emphasized that the Veteran's behavior was erratic, impulsive and rash and that he would stare at pictures of a blood-soaked jeep and laugh for hours. He had auditory and visual hallucinations and threatened to kill his wife on two occasions. 

After carefully reviewing the entire record, the Board finds that the evidence to be in relative equipoise in showing that the Veteran had an innocently acquired psychiatric disorder that was diagnosed as a psychosis or major depressive disorder that contributed substantially or materially in producing the Veteran's death by drowning. 

The Board notes that compensation shall not be paid if a disability was the result of a veteran's own willful misconduct or abuse of alcohol or drugs. 38 U.S.C.A. 
§§ 105, 1110; 38 C.F.R. §§ 3.1(n), 3.301(c). However, service connection may be established for alcohol abuse secondary to a service-connected disability. See 38 C.F.R. § 3.310. 

To the extent that the coroner's findings did not definitely rule out evidence of drug usage at the time of the Veteran's death, and given his documented behavior and drug usage during service and for the short period of time prior to his death thereafter, the Board finds the medical evidence to be in relative equipoise in showing that a service incurred psychiatric disorder as likely as not contributed materially and substantially in producing the Veteran's death by drowning. 

When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 3.102. See also 38 U.S.C.A. § 5107(b) ; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 

Therefore, on this record, service connection for the cause of the Veteran's death is warranted. 



ORDER

Service connection for the cause of the Veteran's death is granted. 



____________________________________________
STEPHEN L. WILKINS
Veterans Law Judge
 Board of Veterans' Appeals



Department of Veterans Affairs