Citation Nr: 1536776 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 08-29 698 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to service connection for a respiratory disorder, to include sarcoidosis.


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

C. Fields, Counsel


INTRODUCTION

The Veteran served on active duty for training from March 15, 1982, to July 22, 1982, with subsequent service in the Army National Guard through February 2000. 

This case initially came before the Board of Veterans' Appeals (Board) on appeal from a November 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, which denied a claim to reopen the previously denied claim for a respiratory disorder. The Veteran testified before the undersigned at a hearing at the RO in May 2010. The Board remanded this case in December 2010, April 2012 (after reopening the previously denied claim), and May 2013 for additional development. The Board's decision herein constitutes a full grant of the appeal; thus, no further notice or assistance is required.

After the last remand, in October 2013, the Veteran appointed a new representative, via a properly completed VA Form 21-22a designating a private attorney. The Agency of Original Jurisdiction (AOJ) conducted development and issued a Supplemental Statement of the Case in June 2015. On July 3, 2015, VA received notice of this attorney's withdrawal as the Veteran's representative, with a copy sent to the Veteran as well. Thereafter, on July 27, 2015, the AOJ recertified this appeal to the Board. Due process has been satisfied with regard to representation because this withdrawal was received prior to the post-remand certification to the Board, and there is no indication that this action would adversely impact the Veteran's interests as the claimant. See 38 C.F.R. §§ 14.631(c) & 20.608(a) (2014). 


FINDING OF FACT

The Veteran has currently diagnosed sarcoidosis, which has been medically linked to active service.


CONCLUSION OF LAW

The criteria for service connection for sarcoidosis have been met. 38 U.S.C.A. §§ 1101, 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2014).



REASONS AND BASES FOR FINDING AND CONCLUSION

Service connection will be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). "Active service" includes active duty, a period of active duty training (ACDUTRA) during which the Veteran was disabled from a disease or injury incurred or aggravated in the line of duty, or a period of inactive duty training (IDT) during which the Veteran was disabled from an injury incurred or aggravated in line of duty. 38 U.S.C.A. §§ 101(24), 106, 1110, 1131; 38 C.F.R. §§ 3.6, 3.303, 3.304. 

Lay evidence is competent for observable symptoms and reports as to the nature of prior treatment and what providers told the patient about a condition, although this evidence may be considered along with other evidence. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006). Competent lay testimony may not be rejected unless it is found to be mistaken or otherwise deemed not credible. McLendon v. Nicholson, 20 Vet. App. 79, 84 (2006). Lay evidence may not be deemed not credible solely due to the absence of contemporaneous medical evidence. Buchanan, 451 F.3d at 1337. 

When there is an approximate balance of positive and negative evidence regarding any material aspect of a claim, all reasonable doubt will be resolved in favor of the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 

The Veteran was first diagnosed with sarcoidosis in 2006 after having breathing problems after working in a dusty environment. He contends that this condition was incurred during service, and that it has been present since his hospitalization in March 1982 for acute respiratory disease, after an initial diagnosis of upper respiratory infection (URI). The Veteran also asserts that skin conditions for which he sought treatment in service, including cysts, warts, and lesions, were manifestations of sarcoidosis. He argues that proper testing for this disorder was not completed until 2006. See, e.g., hearing transcript, August 2015 arguments. 

Although efforts to obtain the inpatient treatment records for the three days of hospitalization in March 1982 were unsuccessful, the Veteran reports that it was for pneumonia and that he had severe illness with shortness of breath, pressure in the chest, and coughing with phlegm, such that he was afraid he might die. An initial service treatment record in March 1982 noted that he was having fever, scratchy throat, headache, felt cold, had chills for one day, and was congested. He was then admitted for three days, and the discharge cover slip "acute respiratory disease." 

In an April 1983 VA examination, the Veteran reported being recently treated at a civilian hospital for another episode of pneumonia, stating that he was prescribed with medications but not hospitalized. He also reported in April 1983 that he had recurrent cough, sore throats, colds, shortness of breath, and pains in the lower chest after the March 1982 episode of pneumonia that required hospitalization. The examiner noted that the Veteran had possible recurrent pneumonia, but that X-rays conducted for the examination did not show active pneumonia. In addition to the X-ray results, the evidence appears to include a chart of pulmonary function test (PFT) results from April 1983; however, there is no interpretation of those results.

Service records include subsequent treatment for respiratory symptoms at times. In September 1985, the Veteran was again diagnosed with URI based on complaints of chest pain, dry cough, shortness of breath, gagging, excessive sweating, irritated throat, headaches, and runny nose. In March 1989, he was diagnosed with hay fever based on complaints of chills, weakness, and nausea, with a history of asthma. 

The Veteran's hospitalization in March 1982 was during his period of active duty for initial training, or ACDUTRA. The Veteran indicated that he was treated at a private hospital in April 1983. It is unclear if the episodes of treatment for respiratory symptoms documented in his service treatment records in 1985 and 1989 were during periods of ACDUTRA because a full list of ACDUTRA dates was not obtained upon remand. Moreover, the Veteran has reported that he had recurring symptoms of cough with phlegm, chest pressure, and shortness of breath after 1982 for which he did not seek treatment. See, e.g., hearing transcript.

A close of the friend of the Veteran, Mr. B, also testified in May 2010 that he had known the Veteran when he had his initial treatment for with lungs in 1982, and that his condition had worsened over the years and since his discharge from service.

There is some conflicting evidence as to the timing of the Veteran's respiratory symptoms. During periodic service evaluations in 1994 and 1999, he denied chronic or frequent colds, asthma, shortness of breath, pain or pressure in the chest, and chronic cough. In a February 1985 Report of Medical History, there were checked marks in the "yes" column for these symptoms that were marked out and replaced with checks in the "no" column, with no further explanation. A chest X-ray was conducted at that time and was found to show no active disease ("NAD"). 

The Veteran's work-up by private providers in 2006, which led to a diagnosis of sarcoidosis, included a February 2006 X-ray that showed bilateral diffuse opacities, that "could be acute or chronic," and it was noted that "pneumonia may be a consideration." A March 2006 CT scan of the chest for a history of pneumonia, shortness of breath, and cough showed nonspecific reticulonodular interstitial infiltrates bilaterally with an upper lobe predominance, which were noted to be worrisome for an atypical infection or atypical inflammatory process, and potentially sarcoidosis. A subsequent biopsy confirmed sarcoidosis. 

In a March 2006 record, the Veteran reported feeling fine until the previous December (or 2005). Nevertheless, in a July 2013 letter, the Veteran's pulmonologist noted that he had stage 3 sarcoidosis with skin manifestations in 2006. Thus, the Veteran's report of feeling "fine" may actually be consistent with his having become accustomed to recurring symptoms for years, as he reports.

The Veteran was found to be disabled for the purposes of Social Security Administration (SSA) disability benefits effective in April 2006 due to a primary diagnosis of sarcoidosis and a secondary diagnosis of restrictive lung disease. In a prior remand, the Board noted that there was evidence of multiple diagnosed respiratory conditions. The December 2012 VA examiner clarified that the current diagnosis was sarcoidosis, based on current PFT results, along with other evidence.

In a May 2010 letter, the Veteran's treating private neurologist, Dr. N, noted the Veteran's reported history of being treated for pneumonia and acute respiratory disease in 1982, which required hospitalization for several days. The Veteran was later discharged from service due to a progressive problem with the lower back. He then worked in a warehouse with significant dust contamination, and he developed significant diffuse pulmonary dysfunction, which was eventually diagnosed as sarcoidosis. Dr. N stated, "[I]t is quite possible that the patient's recent lung problem with ongoing disability might be directly or indirectly related to the lung infection in 1982." Dr. N did not provide any other explanation for this opinion.

In a June 2010 letter, another private treating provider, Dr. B, noted the Veteran's reports of respiratory problems since 1982, which are generally consistent with his reports as summarized above, and that he was diagnosed with sarcoidosis in 2006. Dr. B did not provide an opinion as to the etiology or date of onset of this condition. 

In a July 2013 treatment record and letter (which was resubmitted in 2015), the Veteran's private treating pulmonologist, Dr. J, stated that she had reviewed his military records from March 1982 through 2000, and that her opinion was that he had suffered from pulmonary sarcoid since March 1982. She reasoned that this was consistent with PFT results that revealed a restrictive pattern consistent with pulmonary sarcoid, and he had multiple visits during service for respiratory complaints. Dr. J stated that a proper work-up, which would have included a CT scan of the chest, was not performed until March 2006, and that this led to a biopsy that showed pulmonary sarcoid. She further stated that the Veteran had stage 3 pulmonary sarcoid with skin manifestations or complications in 2006, and he had been receiving ongoing therapy for symptom and disease progression control. 

In a May 2015 addendum, a VA examiner noted that Dr. J did not specify which PFT results she was referencing to support her opinion that the Veteran had pulmonary sarcoidosis since 1982, and stated that he did not find any PFT results in the record between 1982 and 1984. As noted above, however, there appear to be PFT results dated in April 1983, which the 2015 VA examiner did not discuss.

In addition to these two positive nexus opinions, including the 2013 opinion with rationale, the Veteran has submitted multiple medical articles regarding sarcoidosis. See Mattern v. West, 12 Vet. App. 222, 228 (1999) (a medical article or treatise "can provide important support when combined with an opinion of a medical professional" if it discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least "plausible causality" based upon objective facts). For example, an article from the Cleveland Clinic stated: 

The exact cause of sarcoidosis is not known. The disease can appear suddenly and then disappear or it can develop gradually and produce symptoms that come and go for a lifetime. Researchers believe that the disease is caused by an abnormal immune response. The symptoms of sarcoidosis can vary greatly from individual to individual and depend on which tissues and organs are affected. Some may have symptoms that appear slowly and subtly and last or recur over a long time span. The immune system changes that allow one person's disease to progress while another person's disease resolves are not well understood. 

An article from Mount Sinai Medical Center stated, "Sarcoidosis may not produce any noticeable symptoms. Symptoms usually appear slowly and they may disappear as mysteriously as they came. Symptoms such as shortness of breath, fever, fatigue may appear to varying degrees and for unknown time periods. They may disappear and return at a later date." 

An article from the Chronic Illness Recovery Counsel stated, "Sarcoidosis is often referred to as a masquerader or the 'snowflake' disease because patients present with so many different symptoms." Another article entitled "Symptoms of Sarcoidosis" stated that patients with sarcoidosis may have some sort of pulmonary involvement and that "[l]ung involvement may be misdiagnosed as respiratory infection and must be differentiated from 'pneumonia.'" Another article indicated that, with regard to diagnosis, "[a]bout 95 percent of people who have sarcoidosis have an abnormal chest x-ray." There are also additional medical articles of record that similarly note the varying nature, symptoms, and possible causes of sarcoidosis. 

In November 2007, December 2012, January 2015, and May 2015, VA examiners opined that there was no link or nexus between the Veteran's current sarcoidosis and treatment for pneumonia or acute respiratory disease during service. Nevertheless, none of these examiners appears to have considered all pertinent evidence, to include the multiple relevant medical articles submitted by the Veteran (even though directed to do so in prior remands), the Veteran's reports of recurring respiratory symptoms after the episode requiring hospitalization in 1982, his assertions of skin manifestations of sarcoidosis in service between 1982 and 2006, or the private opinion indicating that the Veteran had advanced sarcoidosis and skin manifestations in 2006. Therefore, the probative value of these opinions is low.

Moreover, the December 2012 VA examiner noted that unspecified medical literature indicates that the exact etiology and pathogenesis of sarcoidosis remain unknown. This is generally consistent with the medical articles of record. 

In light of the positive private medical opinions that considered the Veteran's lay reports as to his recurring symptoms in addition to other available evidence, as well as the medical articles discussing the possible intermittent and varying nature of symptoms, the evidence is in relative equipoise as to whether his current sarcoidosis was incurred during active service. Resolving doubt in the Veteran's favor, service connection is warranted for sarcoidosis. 38 C.F.R. §§ 3.102, 3.303. 


ORDER

Service connection for sarcoidosis is granted.



____________________________________________
Joaquin Aguayo-Pereles
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs