﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/31/19

DOCKET NO. 190219-4553
DATE: October 31, 2019

ORDER

Entitlement to service connection for left ankle achilles tendon rupture is denied.

Entitlement to service connection for a thyroid disorder is denied.

Entitlement to service connection for right lower extremity hip replacement is denied.

Entitlement to service connection for sleep apnea is denied.

Entitlement to service connection for left shoulder surgery bone spur is denied.

FINDINGS OF FACT

1. The Veteran’s left ankle achilles tendon rupture was not noted during his period of honorable service and was not manifest within a year of discharge from his period of honorable service, nor is it otherwise etiologically related to service. 

2. The Veteran’s thyroid disorder was not noted during his period of honorable service and was not manifest within a year of discharge from his period of honorable service, nor is it otherwise etiologically related to service. 

3. The Veteran’s right lower extremity hip replacement was not noted during his period of honorable service and was not manifest within a year of discharge from his period of honorable service, nor is it otherwise etiologically related to service. 

4. The Veteran’s sleep apnea was not noted during his period of honorable service and was not manifest within a year of discharge from his period of honorable service, nor is it otherwise etiologically related to service. 

5. The Veteran’s left shoulder surgery bone spur was not noted during his period of honorable service and was not manifest within a year of discharge from his period of honorable service, nor is it otherwise etiologically related to service. 

CONCLUSIONS OF LAW

1. The criteria for service connection for left ankle achilles tendon rupture have not been met. 38 U.S.C. §§ 1110, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2018).

2. The criteria for service connection for a thyroid disorder have not been met. 38 U.S.C. §§ 1110, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2018).

3. The criteria for service connection for right lower extremity hip replacement have not been met. 38 U.S.C. §§ 1110, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2018).

4. The criteria for service connection for sleep apnea have not been met. 38 U.S.C. §§ 1110, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2018).

5. The criteria for service connection for left shoulder surgery bone spur have not been met. 38 U.S.C. §§ 1110, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decision on appeal was issued in February 2019. In June 2019, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 § C.F.R. 19.2(d)).

The Veteran had a period of active military service for purposes of VA benefits from July 1976 to November 1981; he also had a period of service from November 1981 to December 1985, which was determined to be a period of dishonorable service. The Veteran selected the Supplemental Claim lane when he opted into the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the February 2019 RAMP rating decision considered new and relevant evidence that was not previously considered by the local VA office. The Veteran timely appealed this RAMP rating decision to the Board of Veterans’ Appeals (Board) and requested the Evidence Submission Review, a process in which the Veteran is allowed to submit additional evidence for the Board to consider within 90 days of filing his appeal to the Board.

In the February 2019 RAMP decision, the Agency of Original Jurisdiction (AOJ) found that new and relevant evidence was submitted to warrant readjudicating the claims for service connection for left ankle achilles tendon rupture, a thyroid disorder, right lower extremity hip replacement, sleep apnea, and left shoulder surgery bone spur. The Board is bound by this favorable finding. 84 Fed. Reg. 138, 167 (Jan. 18, 2019) (to be codified at 38 § C.F.R. 3.104(c)).

SERVICE CONNECTION

Entitlement to service connection requires evidence of three elements: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or nexus between the current disability and the disease or injury incurred or aggravated during active service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

1. Entitlement to service connection for left ankle achilles tendon rupture.

The Veteran contends that his left ankle achilles tendon rupture is the result of his military occupational specialty (MOS) in service. Specifically, the Veteran asserts that his duties in field artillery resulted in wear and tear on his body. Alternatively, he contends that his left ankle achilles tendon rupture was due to his involvement in a car accident in July 1980 while in Germany, in which he was thrown from the vehicle and substantial sustained injuries. In this regard, the Veteran asserts that the accident resulted in a chipped bone in his heel which wore through his muscle over the years. 

The AOJ found that the Veteran had a current diagnosis of left ankle achilles tendon rupture and underwent repair for left ankle achilles tendon rupture in December 1998.

The question in this case is whether a causal relationship or nexus exists between the Veteran’s left achilles tendon rupture and his active service. 

The Veteran’s service treatment records (STRs) are silent for any complaints, treatment, or diagnosis related to his left ankle. July 1980 STRs note treatment for a left lower leg laceration, and a June 1981 STR notes complaints of left knee pain, swollen left shin, and pain on the site of a prior injury. There is no separation examination of record. 

An August 2016 VA examination notes that the Veteran reported that he sustained a laceration to the left lower extremity in a motor vehicle accident, at which time he was told that his achilles tendon was bruised. The Veteran indicated that, post-service, he had an achilles tendon rupture in 1986, requiring surgical correction. The examiner noted that service treatment records documented a laceration on the left lower extremity and opined that it was less likely than not that the Veteran’s achilles tendon rupture incurred in service because service treatment records are silent for any diagnosis or treatment for a ruptured achilles tendon.

After review of the evidence, the Board is unable to attribute the Veteran’s left ankle achilles tendon rupture to his military service. There is no medical opinion of record indicating that the Veteran’s left ankle achilles tendon rupture was incurred in other otherwise related to active service. Moreover, there is no competent medical or lay evidence demonstrating continuity of symptoms since service. None of the Veteran’s medical treatment records indicate that he suffered from a left ankle achilles tendon rupture while in service or related symptoms on an ongoing basis since separation from service. The earliest evidence of record suggesting the onset of a left ankle achilles tendon rupture was not until many years after the Veteran’s active service. The Board notes that, although not a dispositive factor, the passage of time between the Veteran’s discharge and an initial diagnosis for the claimed disorder is one factor that weighs against the Veteran’s claim. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

The Board has considered the Veteran’s assertion that his left ankle achilles tendon rupture is related to his active service and acknowledges that the Veteran is competent to report his symptoms; however, to the extent that such assertions purport to establish the etiology of any such disability, such assertions do not provide persuasive support for the claim, as the Veteran is not shown to possess the medical training to render competent opinions about such complex medical matters. See Davidson, 581 F. 3d at 1313; Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006).

Based on the foregoing, the Board finds that the preponderance of the evidence is against a grant of service connection for left ankle achilles tendon rupture. In reaching this conclusion, the Board has considered the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim, that doctrine is not applicable, and service connection must be denied. 38 U.S.C. § 5107(b).

2. Entitlement to service connection for a thyroid disorder.

The Veteran contends that his thyroid disorder is the result of his military occupational specialty (MOS) in service. Specifically, the Veteran asserts that his duties in field artillery caused severe stress and high blood pressure, resulting in his thyroid disorder. 

The AOJ found that the Veteran had a medical history noting a diagnosis of congenital hypothyroidism in November 2016. 

The question in this case is whether a casual relationship or nexus exists between the Veteran’s thyroid disorder and his active service.

As an initial matter, the Board notes that the Veteran has not received a VA examination for his thyroid disorder; however, the Board finds that an examination is not warranted because there is neither evidence of in-service incurrence or continuity of symptoms since service. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010). Therefore, the Board finds that no pre-decisional error is found in this regard.

STRs are silent for any complaints, treatment, or diagnosis related to a thyroid disorder, and, as previously indicated, there is no separation examination of record. 

After review of the evidence, the Board is unable to attribute the Veteran’s thyroid disorder to his military service. There is no medical opinion of record indicating that the Veteran’s thyroid disorder was incurred in other otherwise related to active service. Moreover, there is no competent medical or lay evidence demonstrating continuity of symptoms since service. None of the Veteran’s medical treatment records indicate that he suffered from a thyroid disorder or related symptoms while in service or on an ongoing basis since separation from service. The earliest evidence of record suggesting the onset of COPD was not until many years after the Veteran’s active service. The Board notes that, although not a dispositive factor, the passage of time between the Veteran’s discharge and an initial diagnosis for the claimed disorder is one factor that weighs against the Veteran’s claim. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

The Board has considered the Veteran’s assertion that his thyroid disorder is related to his active service and acknowledges that the Veteran is competent to report his symptoms; however, to the extent that such assertions purport to establish the etiology of any such disability, such assertions do not provide persuasive support for the claim, as the Veteran is not shown to possess the medical training to render competent opinions about such complex medical matters. See Davidson, 581 F. 3d at 1313; Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006).

Based on the foregoing, the Board finds that the preponderance of the evidence is against a grant of service connection for a thyroid disorder. In reaching this conclusion, the Board has considered the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim, that doctrine is not applicable, and service connection must be denied. 38 U.S.C. § 5107(b).

3. Entitlement to service connection for right lower extremity hip replacement.

The Veteran contends that his right lower extremity hip replacement is the result of his military occupational specialty (MOS) in service. Specifically, the Veteran asserts that his duties in field artillery resulted in wear and tear on his body. Alternatively, he contends that his right lower extremity hip replacement was due to his involvement in a car accident in July 1980 while in Germany, in which he was thrown from the vehicle and substantial sustained injuries. 

The AOJ found that the Veteran had a medical history of a right hip replacement in November 2016. 

The question in this case is whether a causal relationship or nexus exists between the Veteran’s right lower extremity hip replacement and his active service. 

As an initial matter, the Board notes that the Veteran has not received a VA examination for his right lower extremity hip replacement; however, the Board finds that an examination is not warranted because there is neither evidence of in-service incurrence or continuity of symptoms since service. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010). Therefore, the Board finds that no pre-decisional error is found in this regard.

STRs are silent for any complaints, treatment, or diagnosis related to the right hip, and, as previously indicated, there is no separation examination of record. 

After review of the evidence, the Board is unable to attribute the Veteran’s right lower extremity hip replacement to his military service. There is no medical opinion of record indicating that the Veteran’s right lower extremity hip replacement was incurred in other otherwise related to active service. Moreover, there is no competent medical or lay evidence demonstrating continuity of symptoms since service. None of the Veteran’s medical treatment records indicate that he suffered from a right hip replacement or related symptoms while in service or on an ongoing basis since separation from service. The earliest evidence of record suggesting the onset of a right hip disability was not until many years after the Veteran’s active service. The Board notes that, although not a dispositive factor, the passage of time between the Veteran’s discharge and an initial diagnosis for the claimed disorder is one factor that weighs against the Veteran’s claim. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

The Board has considered the Veteran’s assertion that his right lower extremity hip replacement is related to his active service and acknowledges that the Veteran is competent to report his symptoms; however, to the extent that such assertions purport to establish the etiology of any such disability, such assertions do not provide persuasive support for the claim, as the Veteran is not shown to possess the medical training to render competent opinions about such complex medical matters. See Davidson, 581 F. 3d at 1313; Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006).

Based on the foregoing, the Board finds that the preponderance of the evidence is against a grant of service connection for right lower extremity hip replacement. In reaching this conclusion, the Board has considered the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim, that doctrine is not applicable, and service connection must be denied. 38 U.S.C. § 5107(b).

4. Entitlement to service connection for sleep apnea.

The Veteran contends that his sleep apnea is the result of his military occupational specialty (MOS) in service. Specifically, the Veteran asserts that his duties in field artillery required him to sleep in uncomfortable positions and constantly be ready to act if needed. 

The AOJ found that the Veteran had a current diagnosis of obstructive sleep apnea, diagnosed in January 2018. 

The question in this case is whether a causal relationship or nexus exists between the Veteran’s sleep apnea and his active service. 

As an initial matter, the Board notes that the Veteran has not received a VA examination for his sleep apnea; however, the Board finds that an examination is not warranted because, as discussed in more detail below, there is neither evidence of in-service incurrence or continuity of symptoms since service. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010). Therefore, the Board finds that no pre-decisional error is found in this regard.

STRs are silent for any complaints, treatment, or diagnosis for sleep apnea or other difficulty sleeping, and, as previously indicated, there is no separation examination of record.

A statement from the Veteran’s former spouse indicates that, when they were married in 1983, she noticed that the Veteran would stop breathing while he was sleeping, and he would snore very loudly. 

After a review of the evidence, the Board is unable to attribute the Veteran’s sleep apnea to his military service. There is no medical opinion of record indicating that the Veteran’s sleep apnea was incurred in other otherwise related to active service. Moreover, there is no competent medical or lay evidence demonstrating continuity of symptoms since his period of honorable service. None of the Veteran’s medical treatment records indicate that he suffered from a sleep apnea or related symptoms while in service or on an ongoing basis since separation from service. The statement provided by the Veteran’s former spouse noted symptoms during his period of service that is considered dishonorable for VA purposes and cannot be considered in determining eligibility for VA benefits. As such, the earliest evidence of record suggesting the onset of sleep apnea was not until many years after the Veteran’s active service. The Board notes that, although not a dispositive factor, the passage of time between the Veteran’s discharge and an initial diagnosis for the claimed disorder is one factor that weighs against the Veteran’s claim. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

The Board has considered the Veteran’s assertion that his sleep apnea is related to his active service and acknowledges that the Veteran is competent to report his symptoms; however, to the extent that such assertions purport to establish the etiology of any such disability, such assertions do not provide persuasive support for the claim, as the Veteran is not shown to possess the medical training to render competent opinions about such complex medical matters. See Davidson, 581 F. 3d at 1313; Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006).

Based on the foregoing, the Board finds that the preponderance of the evidence is against a grant of service connection for sleep apnea. In reaching this conclusion, the Board has considered the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim, that doctrine is not applicable, and service connection must be denied. 38 U.S.C. § 5107(b).

5. Entitlement to service connection for left shoulder surgery bone spur.

The Veteran contends that his left ankle achilles tendon rupture is the result of his military occupational specialty (MOS) in service. Specifically, the Veteran asserts that his duties in field artillery resulted in wear and tear on his body. Alternatively, he contends that his left shoulder surgery bone spur was due to his involvement in a car accident in July 1980 while in Germany, in which he was thrown from the vehicle and substantial sustained injuries. 

The question in this case is whether a causal relationship or nexus exists between the Veteran’s left shoulder surgery bone spur and his active service. 

As an initial matter, the Board notes that the Veteran has not received a VA examination for his left shoulder surgery bone spur; however, the Board finds that an examination is not warranted because there is neither evidence of in-service incurrence or continuity of symptoms since service. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010). Therefore, the Board finds that no pre-decisional error is found in this regard.

STRs are silent for any complaints, treatment, or diagnosis related to the left shoulder, and, as previously indicated, there is no separation examination of record. 

After review of the evidence, the Board is unable to attribute the Veteran’s left shoulder surgery bone spur to his military service. There is no medical opinion of record indicating that the Veteran’s left shoulder surgery bone spur was incurred in other otherwise related to active service. Moreover, there is no competent medical or lay evidence demonstrating continuity of symptoms since service. None of the Veteran’s medical treatment records indicate that he suffered from a left shoulder surgery bone spur or related symptoms while in service or on an ongoing basis since separation from service. The earliest evidence of record suggesting the onset of a left shoulder disability was not until many years after the Veteran’s active service. The Board notes that, although not a dispositive factor, the passage of time between the Veteran’s discharge and an initial diagnosis for the claimed disorder is one factor that weighs against the Veteran’s claim. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

The Board has considered the Veteran’s assertion that his left shoulder surgery bone spur is related to his active service and acknowledges that the Veteran is competent to report his symptoms; however, to the extent that such assertions purport to establish the etiology of any such disability, such assertions do not provide persuasive support for the claim, as the Veteran is not shown to possess the medical training to render competent opinions about such complex medical matters. See Davidson, 581 F. 3d at 1313; Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006).

(Continued on the next page)

 

Based on the foregoing, the Board finds that the preponderance of the evidence is against a grant of service connection for left shoulder surgery bone spur. In reaching this conclusion, the Board has considered the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim, that doctrine is not applicable, and service connection must be denied. 38 U.S.C. § 5107(b).

 

 

KELLI A. KORDICH

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board D. Hite, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.