﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 191121-44712
DATE: August 31, 2020

ORDER

Entitlement to service connection for the cause of the Veteran’s death is granted.

FINDINGS OF FACT

1. The Veteran died in August 2018, and the immediate cause of his death was acute myelogenous leukemia. 

2. The appellant was married to the Veteran at the time of his death.

3. At the time of the Veteran’s death he was service-connected for posttraumatic stress disorder (PTSD) rated at 30 percent disabling and diabetes mellitus type II rated at 20 percent disabling.

4. Resolving reasonable doubt in the appellant’s favor, the Veteran’s acute myelogenous leukemia was caused by his service to include exposure to herbicides in the Republic of Vietnam. 

CONCLUSION OF LAW

The criteria for service connection for the cause of the Veteran’s death have been met. 38 U.S.C. §§ 1310, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.312 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served on active duty in the U.S. Army from December 1965 to September 1967 with service in the Republic of Vietnam. Appellant claims as the Veteran’s surviving spouse. 

A rating decision was issued in November 2018 that denied entitlement to service connection for the cause of the Veteran’s death. Within one year in November 2018, appellant submitted new evidence. The agency of original jurisdiction (AOJ) in the November 2019 rating decision considered whether there was new and relevant evidence that had been submitted and confirmed and continued the previous denial for the claim for service connection for the Veteran’s cause of death. However, there was not a prior final rating decision at the time as disagreement with the November 2018 decision had not expired, and as such it was unnecessary for the AOJ to consider whether new and relevant evidence was warranted. As such the Board will not consider whether new and relevant evidence has been submitted herein. 38 C.F.R. §§ 3.2501(a)(1), 19.2.

Then appellant submitted a notice of disagreement in November 2019 via VA Form 10182 and requested direct review by a Veterans Law Judge. 38 C.F.R. § 19.2 (d).

DIC

To grant service connection for the cause of the Veteran’s death, it must be shown that a service-connected disability caused the death, or substantially or materially contributed to it. A service-connected disability is one which was incurred in or aggravated by active service, one which may be presumed to have been incurred during such service, or one which was proximately due to or the result of a service-connected disability. 38 U.S.C. § 1310; 38 C.F.R. § 3.312.

The death of a veteran will be considered as having been due to a service-connected disability when such disability was either the principal or contributory cause of death. 38 C.F.R. § 3.312 (a). For a service-connected disability to be a contributory cause of death, it must be shown that it contributed substantially or materially, that it combined to cause death, or aided or lent assistance to the production of death. In this regard, it is not sufficient to show that the service-connected disability casually shared in producing death; rather, it must be shown that there was a causal connection. 38 C.F.R. § 3.312 (c)(1).

For purposes of establishing service connection for a disability resulting from exposure to a herbicide agent (including Agent Orange), a Veteran who, during active military, naval, or air service, served in the Republic of Vietnam between January 1962 and May 1975, shall be presumed to have been exposed during such service to a herbicide agent, absent affirmative evidence to the contrary demonstrating that the Veteran was not exposed to any such agent during service. 38 U.S.C. § 1116 (f). If a Veteran was exposed to Agent Orange during service, certain listed diseases, are presumptively service-connected. 38 U.S.C. § 1116 (a)(1); 38 C.F.R. § 3.309 (e). As discussed below, the Veteran served in the Republic of Vietnam during the applicable time period, and exposure to herbicides is presumed. 

If a veteran was exposed to a herbicide agent (to include Agent Orange) during active military, naval or air service and has contracted an enumerated disease to a degree of 10 percent or more at any time after service (except for chloracne and early-onset peripheral neuropathy which must be manifested within a year of the last exposure to an herbicide agent during service), the veteran is entitled to a presumption of service connection even though there is no record of such disease during service. 38 U.S.C. § 1112; 38 C.F.R. §§ 3.307, 3.309(e).

The enumerated diseases are AL amyloidosis; chloracne or other acneform diseases; diabetes mellitus, type 2, Hodgkin’s disease, all chronic B-cell leukemias, multiple myeloma, non-Hodgkin's lymphoma, early-onset peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), soft-tissue sarcomas (other than osteosarcoma, chondrosarcoma, Kaposi’s sarcoma, or mesothelioma), Parkinson’s disease, and ischemic heart disease. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307(a)(6)(iii), 3.309(e), 3.313, 3.318.

VA has determined there is no positive association between exposure to herbicides and any other condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. See Notice, 68 Fed. Reg. 27630 -7641(2003).

Notwithstanding the foregoing, regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d); see also Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). In other words, a presumption of service connection provided by law is not the sole method for showing causation in establishing a claim for service connection for disability due to herbicide exposure. See Stefl v. Nicholson, 21 Vet. App. 120 (2007).

Entitlement to service connection for the cause of the Veteran’s death

The appellant contends that the Veteran’s death was caused by his in-service exposure to herbicides which resulted in his acute myelogenous leukemia. The appellant contends that the Veteran’s acute myelogenous leukemia developed as a result of his exposure to herbicides while serving in the Republic of Vietnam. The appellant is competent to describe the Veteran’s symptoms and these statements are credible. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). However, the appellant is not competent to establish the cause of the disease or its relationship to aspects of service. 

The question for the Board is whether the Veteran’s cause of death was incurred in or aggravated by service, to include in-service exposure to herbicides. 

The August 2018 death certificate lists acute myelogenous leukemia as the Veteran’s cause of death. As noted above, at the time of his death the Veteran was service-connected for PTSD rated at 30 percent disabling and diabetes mellitus type II rated at 20 percent disabling. At the time of the Veteran’s death he was not service-connected for acute myelogenous leukemia. 

Based on the evidence of record, the Board finds that the evidence is in relative equipoise as to whether the Veteran’s cause of death, acute myelogenous leukemia was incurred in or aggravated by service, to include exposure to herbicides. There is both favorable and unfavorable evidence regarding the cause of the Veteran’s death and whether such is related to service. 

Service personnel records note the Veteran served in the U.S. Army as an automatic weapons crewman. The Veteran served in the Republic of Vietnam from October 1966 to September 1967. Service treatment records show no treatment for acute myeloid leukemia. Based on his service in Vietnam from October 1966 to September 1967, he is presumed to have been exposed to the designated herbicide agents. 

A November 2018 opinion has been submitted by appellant from the Veteran’s private physician. The opinion noted that the Veteran had acute myeloblastic leukemia, which was at least as likely as not, related to Agent Orange exposure. The Board finds this opinion is entitled to less probative weight. 

Next, a VA opinion from June 2019 has been associated with the claims file. The VA examiner noted that the Veteran’s death certificate lists acute myelogenous leukemia as his cause of death. Based upon a review of the claims folder, the VA examiner found that it is less likely than not that the Veteran’s acute myelogenous leukemia was proximately due to or the result of a service-connected condition. The VA examiner noted that acute myelogenous leukemia is not a presumptive condition for service connection due to the Veteran’s in-service exposure to Agent Orange. The examiner noted that the Veteran’s acute myelogenous leukemia is not a B-cell leukemia and thus presumptive service connection is not warranted. However, the examiner failed to fully address direct service connection. The Board finds this opinion is entitled to less probative weight. 

Then an August 2019 supplemental opinion from the Veteran’s treating physician has been submitted by appellant. The physician treated the Veteran for acute myeloblastic leukemia (AML) arising out of a myelodysplastic syndrome (MDS). The Veteran developed leukopenia and thrombocytopenia in June 2018 and underwent a bone marrow biopsy which revealed a hypercellular marrow with increased CD 34 positive blasts at 18 to 20 percent consistent with evolving acute myeloid leukemia, with underlying dysplastic megakaryocytes. The Veteran underwent chemotherapy with Vyxeos and subsequently passed away due to a subdural hematoma secondary to profound thrombocytopenia during induction chemotherapy. 

The Veteran’s treating physician noted that the Veteran had 8q+ and trisomy 8 chromosomal abnormalities in his bone marrow, and abnormalities such as these in a case of MDS can be a result of prior exposure to a toxin or radiation therapy. The physician noted the Veteran and his wife reported his exposure to Agent Orange during service. The physician found that the Veteran’s MDS/AML was more likely than not caused by his exposure to Agent Orange in-service. The physician noted a review of the medical literature which supports the contention that benzene exposure is an accepted precursor of MDS and AML. Further, the physician noted a review of the Veterans and Agent Orange: Update 2010 suggests that AML is associated with exposure to benzene. The physician noted that based on her clinical knowledge and professional opinion that benzene exposure is linked to MDS/AML. The physician concluded that Benzene is a chemical element of Agent Orange, and there is evidence that Agent Orange was contaminated by a compound called 2,3,7,8 tetrachlorodibenzo-p-dioxin, otherwise known as dioxin. The physician cited literature suggesting that the dibenzo competent of this compound refers to the two benzene rings present in the chemical structure. Which points towards a connection between exposure to the benzene rings in dioxin and future development of MDS/AML. The physician found that it was her professional opinion that it is more likely than not that the Veteran’s AML was due to his exposure to Agent Orange during his time in-service. The Board finds that this opinion is entitled to some but not convincing probative weight because this theory is not supported in the literature cited by the physician. 

The Board does not find support in the cited literature for the theory that because the herbicide and its dioxin components have a structure containing one or more rings of 6 carbon atoms that theses complex organic compounds necessarily have the same chemical properties and biological effects as the stand alone, simple chemical compound benzene that is stable and often used as a solvent. The record does not show that the Veteran had exposure to benzene solvents. 

The physician referred to a NAS study, Veterans and Agent Orange (VAO), Update 2010 for the finding that AML is associated with exposure to benzene. The Board reviewed the most recent update in 2018 of this study. The authors noted that risk factors associated with AML include high doses of ionizing radiation, occupational exposure to benzene, and exposure to some medications used in cancer chemotherapy (such as melphalan). However, the authors specifically examined the evidence of an association of AML to herbicide and found a difference between the biological effects of herbicide and the compound benzene. They noted that Vietnam veterans have expressed concern about whether myelodysplastic syndromes, which can transform to AML, are associated with Agent Orange exposure. However, no results on those conditions in conjunction with the compounds of interest (COIs) have been found in literature searches. Based on the evidence reviewed here and in previous VAO reports, the authors concluded that there is inadequate or insufficient evidence to determine whether there is an association between exposure to the COIs and leukemias in general. An exception is the specific leukemia subtypes of chronic B-cell hematoproliferative diseases, including CLL and HCL, which are more appropriately grouped with lymphomas. In the analysis, the authors clearly distinguish between the solvent benzene and the compounds of interest that include dioxin and TDCC contaminants. 

VA and private treatment records have been associated with the claims file. These treatment records note the Veteran underwent ongoing treatment for acute myeloid leukemia. A bone marrow aspiration in June 2018 noted that such was consistent with evolving acute myeloid leukemia.

After consideration of all the evidence of record, the Board finds that the evidence is not compelling either for or against but is in relative equipoise as to whether a finding that service connection for the Veteran’s cause of death is warranted. As such, the Board resolves reasonable doubt in appellant’s favor as to whether the Veteran’s cause of death is caused by service. There is both favorable and unfavorable evidence regarding the Veteran’s cause of death and whether his acute myelogenous leukemia was incurred in service, to include in-service exposure to herbicides. The key issue is that there is conflicting evidence between the opinions of record as to whether the Veteran’s cause of death is related to service. 

The appellant’s lay statements of record regarding the Veteran’s symptoms and in-service events are credible. However, the record does not reflect that the appellant has the requisite training or expertise to offer a medical opinion linking a service-connected disability and in-service injury to the cause of death and is not competent to provide a nexus opinion in this case. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007).

The VA opinion in June 2019 found that the medical evidence does not support that the Veteran’s acute myelogenous leukemia is related to service. The VA examiner noted that it is less likely than not that the Veteran’s acute myelogenous leukemia was proximately due to or the result of a service-connected condition. However, this writer cited only the absence of a legal presumption and did not address service connection on a direct basis or apply the available medical research to this Veteran’s case. 

Further, the Board has considered the November 2018 and August 2019 opinions appellant submitted from the Veteran’s private physician. The August 2019 opinion noted she treated the Veteran for acute myeloblastic leukemia (AML) arising out of a myelodysplastic syndrome (MDS). The physician found that the Veteran’s MDS/AML was more likely than not caused by his exposure to Agent Orange in-service. The physician noted a review of the medical literature which supports the contention that benzene exposure is an accepted precursor of MDS and AML.

The private physician noted the Veteran developed leukopenia and thrombocytopenia in June 2018 and underwent a bone marrow biopsy which revealed a hypercellular marrow with increased CD 34 positive blasts at 18 to 20 percent consistent with evolving acute myeloid leukemia, with underlying dysplastic megakaryocytes. The Veteran’s treating physician noted that the Veteran had 8q+ and trisomy 8 chromosomal abnormalities in his bone marrow, and abnormalities such as these in a case of MDS can be a result of prior exposure to a toxin or radiation therapy. The physician noted the Veteran and his wife reported his exposure to Agent Orange during service. However, the underlying theory of the opinion is based on a finding that benzene and herbicide contaminants cause the same disease outcomes. Therefore, the Board finds that the physician’s opinion must be taken as competent although the rationale is not supported by the cited medical studies. 

Nevertheless, the Board finds the August 2019 private opinion is entitled to some probative weight in this case only and is not an endorsement that herbicide exposure generally and necessarily causes AML. Thus, resolving reasonable doubt in appellant’s favor, the Board finds that the Veteran’s cause of death is related to service. As such service connection for the Veteran’s cause of death is warranted. 

 

J.W. FRANCIS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board K. Kardian, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.